[No. 22164-1-II.    Division Two.    March 12, 1999.]

CLARK COUNTY CITIZENS UNITED, INC., *Respondent,* v. CLARK COUNTY NATURAL RESOURCES COUNCIL, ET AL., *Appellants.*

John S. *Karpinski* and Jennifer J. *Peet*, for appellants.

*Christine O. Gregoire, Attorney General,* and *Marjorie T. Smitch, Assistant*; and *Linda B. Clapham* and *Glenn J. Amster* of *Lane Powell Spears Lubersky, L.L.P.*, for respondent.

*Stephen Harold G. Overstreet* on behalf of Building Industry Association of Washington, amicus curiae.

MORGAN, J. — The Clark County Natural Resources

Council appeals a superior court determination that the Growth Management Act does not empower the Western Washington Growth Management Board to order a county to use as a cap on non-urban growth, population projections made by the Office of Financial Management. We affirm.

The Growth Management Act (GMA) is codified as RCW 36.70A. It was enacted in 1990. It applies in many but not all counties.[1]

A county subject to the GMA is required to adopt countywide planning policies, development regulations and, in most cases, a comprehensive plan.[2] Such a county must designate urban growth areas,[3] as well as agricultural lands, forest lands, mineral resource lands, and critical areas.[4] By operation of law, such a county designates as "rural" any land "not designated for urban growth, agriculture, forest, or mineral resources."[5]

When designating urban growth areas, a county must include land and densities "sufficient to permit the urban growth that is projected to occur in the county . . . for the succeeding twenty-year period."[6] In doing this, a county must consider "the growth management population projection made for the county by the office of financial management [OFM]."[7] OFM makes its projection pursuant to RCW 43.62.035.

Having designated urban growth areas, a county may

---

[1] *See* RCW 36.70A.040(1), (2).

[2] RCW 36.70A.040(3).

[3] RCW 36.70A.040(3)(c); RCW 36.70A.110(1).

[4] RCW 36.70A.040(3)(b); RCW 36.70A.170(1); RCW 36.70A.030(2), (5), (8), (11), (17), (18), (19), (20). In 1994, subsections 17-20 were numbered 14-17, respectively.

[5] RCW 36.70A.070(5).

[6] RCW 36.70A.110(2); *see* RCW 43.62.035.

[7] RCW 36.70A.110(2).

not allow urban growth outside those areas.[8] "Urban" growth is "growth that makes intensive use of land for the location of buildings, structures, and impermeable surfaces to such a degree as to be incompatible with the primary use of land for the production of food, other agricultural products, or fiber, or the extraction of mineral resources, rural uses, rural development, and natural resource lands . . . ."[9]

Notwithstanding the designation of urban growth areas, a county may allow *non*-urban or "rural" growth outside those areas.[10] "Non-urban" or "rural" growth encompasses "a variety of uses and residential densities, including clustered residential development,"[11] provided that such uses and densities are "not characterized by urban growth," and are "consistent with rural character."[12]

Clark County is subject to the GMA. It has about 500,000 acres, many of which are urban or suburban in character. In December 1994, it adopted a comprehensive plan that designated about 83,500 acres as rural. The plan stated "that *all* rural lands would have a minimum lot size of 5 acres."[13]

Numerous parties appealed the plan to the Western Washington Growth Management Board (the Board), including the Clark County Natural Resources Council (CCNRC) and Clark County Citizens United, Inc. (CCCU).

---

[8] RCW 36.70A.110(1); RCW 36.70A.010(1), (2).

[9] RCW 36.70A.030(17). In 1994, this subsection was numbered 14 rather than 17.

[10] RCW 36.70A.110(1) ("Each county that is required or chooses to plan under RCW 36.70A.040 shall designate an urban growth area or areas within which urban growth shall be encouraged and outside of which growth can occur only if it is not urban in nature.").

[11] RCW 36.70A.030(15). We use this subsection as a present indicator of legislative intent, even though it was not enacted until 1997. *See* LAWS OF 1997, ch. 429, § 3.

[12] RCW 36.70A.070(5)(b), as amended in 1997. In 1994, the GMA allowed "uses that are compatible with the rural character of such lands," and "a variety of rural densities." Former RCW 36.70A.070(5); LAWS OF 1990, ch. 17, § 7.

[13] Clerk's Papers at 38.

CCNRC sought stricter controls on land use, while CCCU sought less strict controls on land use.

In September 1995, after weeks of hearings, the Board ruled, among other things, that Clark County's plan did not adequately restrict rural growth.[14] Legally, the Board rested its ruling on two premises allegedly drawn from the GMA: (1) that population projections and allocations . . . are not solely for use in urban areas, and (2) that the population projections for urban areas plus the population projections for non-urban areas must total the population projection for the entire county. Factually, the Board observed (1) "that . . . the County allocated 15,000 of the population projection number for non-urban growth"; (2) that the County had "an excess of 13,500 preexisting undeveloped tax lots"; and (3) that the County had based its planning on an average of 2.33 persons per household. As a result, according to the Board, "there would be more than twice the number of lots available to house the allocated 15,000 population projection, even without additional divisions of land that would likely occur over the next 20 years."[15] Based on this view of the law and facts, the Board ruled that the GMA precluded 5-acre lots in rural areas, and it ordered the County to "increase the minimum lot sizes" in such areas.[16]

CCCU appealed to the Clark County Superior Court, which reversed the Board's order. The court ruled that the GMA did not require the County to use OFM's population projections as a fixed cap on non-urban growth, and that the Board had exceeded its authority by creating and imposing such a cap on the County.[17]

█ CCNRC now appeals to this court. Its primary

---

[14]The Board also made many other holdings that we are not asked to review.

[15]Clerk's Papers at 39-40.

[16]Clerk's Papers at 79.

[17]The superior court said in part:

It is evident the rural land use density regulations were driven in part by earlier Growth Management Hearing Board decisions requiring urban population plus rural population to equal Office of Financial Management population

contention is that the trial court "erroneously concluded OFM population projections are not a restraint/cap on rural growth."[18] This contention involves a question of law[19] that we review without deference to the trial court,[20] but arguably with deference to the Board.[21] According to CCCU, the question is whether "the GMA requires [that] the OFM population projections be used as the defining element in establishing land use densities in rural areas."[22] In simpler terms, the question is whether the GMA requires a county to use OFM's population projections as a cap on non-urban growth.

The GMA requires a county to consider OFM population projections when sizing urban growth areas. Thus, RCW 36.70A.110 provides in pertinent part:

> (1) Each county that is required or chooses to plan under RCW 36.70A.040 shall designate an urban growth area or areas within which urban growth shall be encouraged and outside of which growth can occur only if it is not urban in nature. . . .
>
> (2) Based upon the growth management population projection made for the county by the office of financial management, the county and each city within the county shall include areas and densities sufficient to permit the urban growth that

forecasts. [Citation omitted.] This formulaic view of the GMA requirement is fatally flawed. There is no requirement in the GMA that the OFM projections be used in any manner other than as a measure to ensure urban growth areas are adequately sized and infrastructure in those growth areas is provided for. The Board's requirement to, in essence, require a vacant buildable lands analysis for the rural area was erroneous. This Board decision, however, compelled the County to downzone substantial portions of the rural areas in order to meet the Board's apparent requirements.

Clerk's Papers at 739-40.

[18]Appellant's Br. at ii.

[19]*City of Pasco v. Public Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992) (construction of statute is question of law).

[20]*City of Redmond v. Central Puget Sound Growth Management Hearings Bd.*, 136 Wn.2d 38, 46, 959 P.2d 1091 (1998). In other words, we review the trial court's ruling "de novo."

[21]We discuss due deference to the Board later in this opinion.

[22]Resp't's Br. at 22.

is projected to occur in the county or city for the succeeding twenty-year period. . . .

Nothing in the GMA provides that a county must use OFM's population projections for any other purpose. More particularly, nothing in the GMA provides that a county must use OFM's population projections as a cap or ceiling when planning for non-urban growth.[23] Construed according to its plain meaning, then, the GMA does not require counties to use OFM's population projections as a cap or ceiling on non-urban growth.

■ Attempting to forestall a holding based on the GMA's plain meaning, CCNRC argues that "the conclusion that the OFM population projection is a hard cap not to be exceeded is supported by a review of the Growth Management Act ('GMA') as a whole."[24] It is our view, however, that such a review tends to detract from, not support, CCNRC's position. As already observed, the GMA requires counties to use OFM's projections when planning for *urban* growth. It omits any reference to counties using OFM's projections when planning for *non-urban* growth. The implications are (1) that the legislature considered how OFM's projections should be used; (2) that the legislature decided to require that counties use OFM's projections when planning for urban growth; and (3) that the legislature decided *not* to require that counties use OFM's projections when planning for non-urban growth.[25]

■ ■ CCNRC argues that the trial court was required to defer to the Board's interpretation of the GMA, and that

---

[23]Without so holding, we assume that the GMA *permits* a county to use OFM's population projections when planning for lands outside its urban growth areas. That question is not presented by this appeal.

[24]Appellant's Br. at 19.

[25]*Snohomish County v. Anderson*, 123 Wn.2d 151, 157, 868 P.2d 116 (1994), quoting *Washington Natural Gas Co. v. Public Util. Dist. No. 1*, 77 Wn.2d 94, 98, 459 P.2d 633 (1969) ("Where a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted by the legislature."); *Bour v. Johnson*, 122 Wn.2d 829, 836, 864 P.2d 380 (1993); *State v. Roadhs*, 71 Wn.2d 705, 707, 430 P.2d 586 (1967).

this court must also. Although a court will defer to an agency's interpretation when that will help the court achieve a proper understanding of the statute,[26] "it is ultimately for the court to determine the purpose and meaning of statutes, even when the court's interpretation is contrary to that of the agency charged with carrying out the law."[27] Here, in our view, the Board misread the statute and exceeded its authority. If we were to defer to its ruling, we would perpetuate, not correct, its error. Under these circumstances, we hold that deference is not due.

Based on the foregoing, we conclude that the GMA does not require counties to use OFM's projections as a cap on non-urban growth. The Board exceeded its authority, and the trial court did not err by reversing the Board's ruling.

Affirmed.

BRIDGEWATER, C.J., and REYNOLDS, J. Pro Tem., concur.

Reconsideration denied April 22, 1999.

Review denied at 139 Wn.2d 1002 (1999).

---

[26]*City of Redmond*, 136 Wn.2d at 46; *City of Pasco*, 119 Wn.2d at 507; *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 813-14, 828 P.2d 549 (1992); *Overton v. Economic Assistance Auth.*, 96 Wn.2d 552, 555, 637 P.2d 652 (1981).

[27]*Overton*, 96 Wn.2d at 555 (citation omitted); *see also Cowiche*, 118 Wn.2d at 815.