977 P.2d 668 (1999)
Dianne L. COCKLE, Respondent,
v.
DEPARTMENT OF LABOR AND INDUSTRIES OF the State of WASHINGTON, Appellant.
No. 22486-1-II.
Court of Appeals of Washington, Division 2.
June 3, 1999.
As Amended on Denial of Reconsideration July 23, 1999.
*669 Terry James Barnett, Rumbaugh Rideout Barnett, Tacoma, for Respondent.
John R. Wasberg, Dept. of Labor & Industries Office of the Atty. Gen., Seattle, for Appellant.
Nancy Thygesen Day, Perkins Coie LLP, Seattle, for Amicus Curiae Washington Self-Insurers Assoc.
MORGAN, J.
The question in this appeal is whether the Department of Labor and Industries must include the reasonable value of employer furnished health insurance[1] in the basis from which it computes an injured worker's time-loss compensation. According to RCW 51.08.178, the answer is yes.
In 1993, Dianne L. Cockle worked full-time for the Pierce County Rural Library District. The District paid her $5.61 per hour. It also furnished her with health insurance, for which it paid premiums of $205.52 per month.[2] According to the parties' stipulation, the insurance was worth about twenty percent of Cockle's compensation.[3]
*670 On November 4, 1993, Cockle suffered an on-the-job injury. She did not work from then until June 6, 1994, and she worked only part-time from June 6, 1994 to October 24, 1994. The library did not provide health insurance from when she was injured to when she returned to work full-time.
After her injury, Cockle sought time-loss compensation based on her monetary pay and the value of her health insurance. The Department made an award based on monetary pay only.
Cockle appealed to the Board of Industrial Insurance Appeals, which affirmed. She then appealed to the superior court, which ruled:
Plaintiff's health and dental insurance premiums were "wages" because they were compensation which had a monetary value, which she received over and above the hourly wages paid directly to her. During periods of disability the employer stopped paying these premiums for her, so she lost monthly compensation which would have been provided for her had she been working. Such premiums are a form of compensation which should be included in wages under RCW 51.08.178. See that statute, and Rose v. Department of Labor and Industries, 57 Wash.App. 751, 790 P.2d 201, review denied, 115 Wash.2d 1010, 797 P.2d 512 (1990).[[4]]
The superior court reversed, and the Department filed this appeal.
Washington's Industrial Insurance Act grants time-loss compensation to a worker who is temporarily disabled due to an industrial injury.[5] It provides that time-loss compensation shall be a percentage of the worker's "wages" at the time of injury.[6] Thus, "wages" are the basis from which time-loss compensation is computed.
Enacted in 1971,[7] RCW 51.08.178 defines the extent to which the term "wages" shall encompass consideration that an employer furnishes in kind.[8] It provides that "[t]he term `wages' shall include the reasonable value of board, housing, fuel, or other consideration of like nature received from the employer as part of the contract of hire."[9]
*671 In essence, RCW 51.08.178 creates three categories of consideration furnished in kind. One is board, housing and fuel. Another is "other consideration of like nature" to board, housing and fuel. A third is other consideration not "of like nature" to board, housing and fuel. Items in the first two categories count as "wages" for purposes of time-loss compensation. Items in the third category do not.
It is not hard to discern why the legislature provided that items in the first category shall count as "wages." Board means food. Housing means shelter. Fuel means heat or warmth. Each is a necessity of life, without which the injured worker cannot survive a period of even temporary disability. Before the worker's injury, each was an item that the employer was supplying in kind. After the worker's injury, each is an item that the worker must replace during the period of his or her disability. Thus, each is an item that the worker must replace out of time-loss compensation, and each is an item that should be included in the basis from which time-loss compensation is computed.
It is not hard to discern why the legislature provided that items in the second category shall count as "wages." Board, housing and fuel are not the only items of consideration that an employer may supply to a worker in kind. An employer often supplies other items also. If those other items are such that the worker must replace them during the period of his or her disability, they are items that the worker must replace out of time-loss compensation, and they should be included in the basis from which time-loss compensation is computed.
It is not hard to discern why the legislature provided that items in the third category term shall not count as "wages." An employer may supply to a worker, in kind, items of consideration that the worker can do without while disabled, and restore or replenish after returning to work. Arguably, examples include pension benefits and vacation pay.[10] The worker need not replace such items out of time-loss compensation, and thus they should not be included in the basis from which time-loss compensation is computed.
The legislature's handling of all three categories is consistent with logic and common sense. The "ultimate goal" of time-loss compensation "is to provide temporary financial support until the injured worker is able to return to work."[11] Indeed, it is for that reason that time-loss compensation terminates when the injured worker's disability *672 ceases or becomes permanent.[12] It follows that time-loss compensation should be based on items of consideration that the worker will need to replace during the period of his or her disability, but not on items that the worker can restore or replenish after he or she is back at work.
The specific problem here is whether employer-furnished health insurance is an item of in-kind consideration that an injured worker generally must replace, while disabled, out of time-loss compensation. In our view, the answer is yes. Health insurance and health care are interchangeable at least for purposes of this case; health care is the only reason to have health insurance, and health insurance is frequently the only practical way in which a worker can obtain health care. Health care is something that an injured worker must have during the period of his or her disability, for both self and family.[13] If an employer was supplying health care (through health insurance or otherwise) before the worker's injury, but no longer supplies it after the worker's injury, the worker must replace it out of time-loss compensation, and it should be included in the basis from which time-loss compensation is computed. Accordingly, we hold that health insurance is consideration "of like nature" to board, housing and fuel, and that the reasonable value of health insurance must be included within "wages" when computing time-loss compensation.
In reaching this result, we reject Cockle's reliance on Rose v. Department of Labor and Industries.[14] In a single sentence of Rose, we said that the term "wages" "include[s] any and all forms of consideration received by the employee from the employer in exchange for work performed."[15] When we said that, we were discussing whether the term "wages" includes consideration paid in cash for work done by a prison inmate. We were not considering whether the term "wages" includes each and every form of consideration that an employer might supply to a worker in kind.[16] Viewed with the benefits of hindsight, the quoted language was non-precedential dictum with respect to consideration furnished in kind.
We also reject Cockle's argument that all forms of consideration must necessarily be included within the basis from which time-loss compensation is computed. She claims (1) that the purpose of time-loss compensation is to replace the "earning capacity" that the injured worker would have had during the period of disability but for the industrial injury;[17] and (2) that one can accurately gauge the worker's "earning capacity" only if one takes into account all consideration that the worker was receiving, in cash or in kind, at the time of the injury. Although this argument may be sound economically, it is not sound legally. Economically, it is true that an injured worker's "lost" or "future" earning capacity is represented by all consideration that the worker was *673 receiving, in cash or in kind, at the time of injury. Legally, however, the legislature's intent controls, whether or not it makes economic sense.[18] Here, for reasons already discussed, the legislature's intent was that "wages" include only those items of in-kind consideration that a worker must replace while disabled.
In reaching our result, we also reject various arguments advanced by the Department. The Department claims that health insurance is not "of like nature" to board, housing and fuel because the typical worker may not use it, or at least is likely to use it less frequently than board, housing and fuel.[19] In our view, however, both use and frequency of use are immaterial. Whether an injured worker must replace an item of in-kind consideration out of time-loss compensation does not turn on whether the worker uses the item, or even on how often the worker uses the item. Rather, it turns on whether the worker must have the item available for use when needed. A worker must purchase food, shelter and heat out of time-loss compensation not because he or she will use those items with any particular degree of frequency, but rather because he or she must have those items available for use when needed by self or family. Analogously, a worker must purchase health insurance out of time-loss compensation not because he or she will use it with any particular degree of frequency, but rather because he or she must have health care available for use when needed by self or family.
The Department contends that it should not have to value health insurance because the reasonable value of health insurance is harder to ascertain than the reasonable value of board, housing and fuel.[20] We disagree. A person charged with ascertaining the reasonable value of board, housing and fuel must examine all pertinent factors to determine what the hypothetical objective buyer would pay the hypothetical objective seller on the open market.[21] A person charged with ascertaining the reasonable value of health insurance must do the same. As a result, this argument does not demonstrate that health insurance is not "of like nature" to board, housing and fuel.
In a related argument pertaining to value, the Department contends that it should not have to value health insurance because the reasonable value of health insurance is not necessarily represented by the benefit to the particular employee or the cost to the particular employer.[22] It is true that benefit to the employee and cost to the employer are only factors to be considered when determining the reasonable value of health insurance to a hypothetical objective person. That is equally true, however, when determining the reasonable value of board, housing and fuel. As a result, this argument does not demonstrate that health insurance is not "of like nature" to board, housing and fuel, or even that health insurance is harder to value than board, housing or fuel.[23]
*674 In another argument pertaining to value, the Department asserts that health insurance is not "of like nature" to board, housing and fuel because health insurance is intangible and board, housing and fuel are tangible. Without more, this distinction is immaterial.
In a final argument pertaining to value, the Department asserts that health insurance is not "of like nature" to board, housing and fuel because health insurance must be valued by "experts," while board, housing and fuel can be valued by lay people. We disagree. An "expert" is merely someone with specialized training in a narrow area, and there is no reason to believe the Department cannot provide one or more of its in-house employees with the training needed to value health insurance.[24]
The Department argues that the calculation of time-loss compensation is meant to be "administratively simple;"[25] that it will be administratively inconvenient if the term "wages" includes health coverage; and therefore that the term "wages" should not include health coverage. We disagree. In RCW 51.08.178, the legislature expressly commanded the Department to ascertain the reasonable value of board, housing and fuel furnished in kind, and also the reasonable value of "other consideration of like nature." In another part of the same statute, the legislature commanded the Department to ascertain, "in cases where a wage has not been fixed or cannot be reasonably and fairly determined," "the usual wage paid other employees engaged in like or similar occupations."[26] Clearly then, the legislature expected the Department to overcome administrative inconvenience when necessary "to insure the fair compensation of disabled workers."[27]
The Department claims that if health insurance is included within "wages," there will be "a flood of litigation" involving other employer-supplied items.[28] Examples, the Department suggests, may include life insurance benefits, stock option plans, deferred compensation plans, profit sharing plans, social security contributions, unemployment contributions, dependent care assistance plans, group legal services plans, low interest loan programs, savings plans, 401(k) matching plans, pension plans, vacation benefits, sick leave benefits, death and disability benefits, charitable contribution matching programs, employer-funded scholarships, and alcohol-drug rehabilitation programs. For reasons already discussed, however, the legislature did not intend that the term "wages" include each and every item of in-kind consideration that yields an economic benefit to a worker. Rather, the legislature intended that "wages" include only those items that the employer was supplying before injury, and that the worker must replace, while disabled, out of time-loss compensation. As a consequence, the legislature did not intent that "wages" include many if not most of the foregoing items, and this "floodgates" argument fails.
The Department argues that health insurance should not be included within "wages" because, if the employer continues the worker's health insurance during the worker's period of disability, the worker will recover twice (once by having the insurance, and again by having the value of the insurance included in the basis for time-loss compensation). The facts here do not require that we address this argument, for the library did not continue Cockle's insurance during the period of her disability. We comment, however, that time-loss compensation is meant "to reflect ... lost earning capacity,"[29] not retained earning capacity. When an injured worker retains his or her health insurance, he or she retains that part of his *675 or her earning capacity, and his or her time-loss compensation should be computed accordingly.
The Department argues that the legislature did not intend the term "wages" to include health insurance for purposes of RCW 51.08.178, because it did not intend the term "wages" to include fringe benefits for purposes of RCW 39.12.010 and a number of other statutes.[30] The necessary but unstated premise is that the legislature intended to use the term "wages" in the same way in all the cited statutes. That premise, however, is flawed. In RCW 51.08.178, the legislature plainly used the term "wages" to mean monetary compensation plus the reasonable value of board, housing, fuel, and "other consideration of like nature." In RCW 39.12.010, the legislature plainly used the term "wage" to mean monetary compensation only. Given these obviously divergent uses of the same word, we decline to use RCW 39.12.010 as an indicator of what RCW 51.08.178 means.
The Department alleges that RCW 51.08.178 is a "compromise between workers and employers,"[31] and that we will upset the compromise by ruling for Cockle. We disagree for at least two reasons. First, the Department offers nothing to show that the 1971 enactment of RCW 51.08.178, as opposed to the earlier enactment of the entire Industrial Insurance Act, was a "compromise" of the kind alleged. Second and more importantly, the argument begs the question. We will upset the alleged "compromise" if the legislature intended that "wages" not include health insurance. We will implement the alleged "compromise" if the legislature intended that "wages" include health insurance. Given that the question is whether the legislature intended that "wages" include health insurance, this argument does not help.
The Department argues we should defer to its reading of RCW 51.08.178, or at least to the Board's reading of that statute. We disagree. Even though the "court will defer to an agency's interpretation when that will help the court achieve a proper understanding of the statute,"[32] the court must "ultimately ... determine the purpose and meaning of statutes, even when the court's interpretation is contrary to that of the agency charged with carrying out the law.'"[33]
The Department relies heavily on Morrison-Knudsen Const. Co. v. Director, Office of Workers' Compensation Programs.[34] The statute at issue in that case was part of the federal Longshore and Harbor Workers' Compensation Act (LHWCA). As it then existed, it defined "wages" as "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury, including the reasonable value of board, rent, housing, lodging, or similar advantage received from the employer...."[35] The plaintiff, a deceased worker's estate, was claiming that health, pension and training payments made by the employer to the worker's union trust fund were an item of "similar advantage" to board, rent, housing and lodging. Rejecting this claim, the United States Supreme Court asserted that "board, rent, housing or lodging are benefits with a present value that can be readily converted into a cash equivalent on the basis of their market values," but that "the present value of these trust funds is not, however, so easily converted into a cash equivalent."[36] It also said that Congress *676 had enacted the LHWCA in 1927, when "employer-funded fringe benefits were virtually unknown," and had amended it several times since, even in 1972, without "seriously consider[ing] the possibility that fringe benefits should be taken into account."[37]
We decline to follow Morrison-Knudsen for at least four reasons. First, as Cockle correctly points out, the LHWCA is fundamentally different from Washington's Industrial Insurance Act. The LHWCA, according to the Morrison-Knudsen Court, is "not a simple remedial statute intended for the benefit of the workers."[38] The Washington Act, in stark contrast, "is remedial in nature and should be liberally construed, with doubts resolved in favor of the worker."[39] Its goal is "to insure fair compensation of disabled workers."[40]
Second, the legislative history of the LHWCA is different from the legislative history of the Washington Act. As the Morrison-Knudsen Court emphasized, Congress passed the federal Act in 1927, when "employer-funded fringe benefits were virtually unknown."[41] Congress later amended the LHWCA several times, even in 1972, without "seriously consider[ing] the possibility that fringe benefits should be taken into account."[42] In contrast, the Washington legislature enacted RCW 51.08.178 in 1971, and by then employer-supplied health insurance was a common way of augmenting monetary compensation.
Third, and perhaps most importantly, the Morrison-Knudsen court was not asked to address the right argument. Just as the Washington statute provides that "wages" shall include items "of like nature" to food, shelter and heat, the federal statute at issue in Morrison-Knudsen provided that "wages" shall include items "of similar advantage" to food and shelter. An apparent if not obvious argument was that Congress intended to include within "wages" those employer-provided necessities that a worker must replace while disabled (including food, shelter, and health care),[43] but not items that a worker can restore or replenish later (arguably including pension and training benefits). It does not appear that the plaintiff made that argument, or that the Court ruled on it.
Fourth, the evidence in Morrison-Knudsen was different from the evidence here. In Morrison-Knudsen, the plaintiff was claiming the reasonable value of the worker's interest in a union trust fund, and the evidence failed to disclose a basis from which to value that interest. Here, the evidence of value is so clear that the parties have stipulated to it.
Both Cockle and the Department rely on cases from other jurisdictions. Some of those cases turn on statutes different from ours. Others follow Morrison-Knudsen's misleading analysis. The remainder are split, and we align ourselves with those holding that the value of employer-furnished health insurance should be included in the basis from which time-loss compensation is computed.
Both Cockle and the Department rely on a passage authored by Professor Arthur Larson. He states that for over seventy years, persons computing worker's compensation benefits "have always begun with a wage basis calculation that made `wage' mean the `wages' that the worker lives on and not miscellaneous `values' that may or may not someday have a value to him depending on a number of uncontrollable contingencies."[44] *677 We believe we are construing RCW 51.08.178 to reflect precisely that distinction.[45]
The Department argues that we should "resort to a dictionary" for the "ordinary meaning" of the term "wages."[46] In doing that, however, we find only definitions that favor Cockle or are inconclusive. According to one standard dictionary, for example, the term "wages" means "a pledge or payment of usu[ally] monetary remuneration by an employer esp[ecially] for labor or services usu[ally] according to contract and on an hourly, daily, or piecework basis and often including bonuses, commissions, and amounts paid by the employer for insurance, pension, hospitalization, and other benefits."[47]
In conclusion, we hold that the term "wages" includes the reasonable value of board, housing, fuel, and "other consideration of like nature;" that "other consideration of like nature" includes and is limited to items of in-kind consideration that an injured worker must replace, while disabled, out of time-loss compensation; that health care as provided through health insurance is such an item; and thus that the reasonable value of health insurance must be included within "wages" when computing time-loss compensation. Based on these holdings, we affirm the superior court and remand to the Department for recomputation of Cockle's time-loss compensation.[48]
HOUGHTON, J., and BRIDGEWATER, C.J., concur.
NOTES
[1] We use the term "health insurance" to mean both medical and dental insurance.
[2] The library paid $162.07 per month for Cockle's medical insurance, and $43.45 per month for her dental insurance. It also paid vacation benefits, but those are not in issue on this appeal.
[3] Brief of Appellant at 34; see also Brief of Appellant at 20 n.9.
[4] Clerk's Papers at 11.
[5] RCW 51.32.090(1), (3); Franks v. Department of Labor and Indus., 35 Wash.2d 763, 766-67, 215 P.2d 416 (1950); Davis v. Bendix Corp., 82 Wash.App. 267, 272, 917 P.2d 586 (1996); Hunter v. Bethel School Dist., 71 Wash.App. 501, 506-07, 859 P.2d 652 (1993).
[6] RCW 51.32.090(1), (3); RCW 51.32.060(1). Usually, "wages" are to be expressed in "monthly" terms. RCW 51.08.178(1) (first sentence); State v. Bodey, 44 Wash.App. 698, 705-06, 723 P.2d 1148 (1986). Because Cockle was married with three children, she was to "receive monthly... seventy-one percent of ... her wages" if temporarily and totally disabled, RCW 51.32.090(1); RCW 51.32.060(1)(d), and a portion of that percentage if temporarily and partially disabled. RCW 51.32.090(3).
[7] Laws of 1971, 1 st Ex.Sess., ch. 289, § 14.
[8] Consideration furnished in cash is not in issue here. For a case in which it was in issue, see Rose v. Department of Labor and Indus., 57 Wash. App. 751, 758, 790 P.2d 201 (1990).
[9] Quoted in full, RCW 51.08.178 provides:

(1) For the purposes of this title, the monthly wages the worker was receiving from all employment at the time of injury shall be the basis upon which compensation is computed unless otherwise provided specifically in the statute concerned. In cases where the worker's wages are not fixed by the month, they shall be determined by multiplying the daily wage the worker was receiving at the time of the injury:
(a) By five, if the worker was normally employed one day a week;
(b) By nine, if the worker was normally employed two days a week;
(c) By thirteen, if the worker was normally employed three days a week;
(d) By eighteen, if the worker was normally employed four days a week;
(e) By twenty-two, if the worker was normally employed five days a week;
(f) By twenty-six, if the worker was normally employed six days a week;
(g) By thirty, if the worker was normally employed seven days a week.
The term "wages" shall include the reasonable value of board, housing, fuel, or other consideration of like nature received from the employer as part of the contract of hire, but shall not include overtime pay except in cases under subsection (2) of this section. However, tips shall also be considered wages only to the extent such tips are reported to the employer for federal income tax purposes. The daily wage shall be the hourly wage multiplied by the number of hours the worker is normally employed. The number of hours the worker is normally employed shall be determined by the department in a fair and reasonable manner, which may include averaging the number of hours worked per day.
(2) In cases where (a) the worker's employment is exclusively seasonal in nature or (b) the worker's current employment or his or her relation to his or her employment is essentially part-time or intermittent, the monthly wage shall be determined by dividing by twelve the total wages earned, including overtime, from all employment in any twelve successive calendar months preceding the injury which fairly represent the claimant's employment pattern.
(3) If, within the twelve months immediately preceding the injury, the worker has received from the employer at the time of injury a bonus as part of the contract of hire, the average monthly value of such bonus shall be included in determining the worker's monthly wages.
(4) In cases where a wage has not been fixed or cannot be reasonably and fairly determined, the monthly wage shall be computed on the basis of the usual wage paid other employees engaged in like or similar occupations where the wages are fixed.
These provisions serve at least three purposes. They require that benefits be based on monthly wages. They provide methods for converting into monthly terms wages that the employer and employee have chosen to express in other terms. And they define the extent to which the term "wages" includes consideration furnished in kind by an employer to a worker. Only the last purpose concerns us here.
[10] Other examples, the Department asserts, include life insurance benefits, stock option plans, deferred compensation plans, profit-sharing plans, social security contributions, unemployment contributions, dependent care assistance plans, group legal services plans, interest-free or low interest loan programs, savings plans, 401(k) matching plans, sick leave benefits, death and disability benefits, charitable contributions matching programs, employer-funded scholarships and fellowships, tuition waivers, and alcohol and drug rehabilitation programs. We rule only on health insurance.
[11] Kaiser Aluminum & Chem. Corp. v. Overdorff, 57 Wash.App. 291, 295-96, 788 P.2d 8 (1990) (emphasis added).
[12] Franks, 35 Wash.2d at 766-67, 215 P.2d 416; Davis, 82 Wash.App. at 272, 917 P.2d 586; Hunter, 71 Wash.App. at 506-07, 859 P.2d 652.
[13] We do not overlook that an injured worker receives medical care from the Department for conditions related to his or her industrial injury. He or she does not receive, however, medical care for conditions not related to the injury, or medical care for his or her family. See RCW 51.36.010.
[14] 57 Wash.App. 751, 758, 790 P.2d 201 (1990).
[15] Rose, 57 Wash.App. at 758, 790 P.2d 201.
[16] In a separate section of Rose, we considered whether the prisoner's board and room were an incident of his employment or of his confinement. That section has no bearing on the discussion here.
[17] The cases do not always describe this "earning capacity" in the same terms. Viewing it from the perspective of the worker's injury, some call it "future" earning capacity. E.g., Kilpatrick v. Department of Labor and Indus., 125 Wash.2d 222, 230, 883 P.2d 1370 (1994) ("The purpose of workers' compensation benefits is to reflect future earning capacity rather than wages earned in past employment"). Viewing it from the perspective of the worker's ensuing period of disability, others call it "lost" earning capacity. E.g., Double D Hop Ranch v. Sanchez, 133 Wash.2d 793, 798, 947 P.2d 727 (1997) (because "the purpose of time-loss compensation is to reflect a worker's lost earning capacity," "we should construe RCW 51.08.178 in a way that will most likely reflect a worker's lost earning capacity"). We perceive no material difference.
[18] This statement is subject to constitutional proscriptions, of course, but none is suggested or apparent here.
[19] The Department's verb is "consume." E.g., Brief of Appellant at 8, 21. We substitute "use."
[20] As far as we can tell, this is what the Department means when it says that "fringe benefits such medical and dental insurance are not readily converted to cash equivalents." Brief of Appellant at 20.
[21] We deem "reasonable value" to be market value. See State v. Clark, 13 Wash.App. 782, 787, 537 P.2d 820 (1975); State v. Hancock, 44 Wash. App. 297, 302, 721 P.2d 1006 (1986); Merchant v. Peterson, 38 Wash.App. 855, 858-59, 690 P.2d 1192 (1984); McCurdy v. Union Pac. R.R. Co., 68 Wash.2d 457, 467, 413 P.2d 617 (1966).
[22] As far as we can tell, this is what the Department means when it says that "the employers' costs do not correlate with the employees' benefits," and that "fringe benefits are speculative in terms of any given employee's ultimate realization of the benefits." Brief of Appellant at 20.
[23] The Department may also be arguing that because an employer often purchases health insurance for a group rather than individual, the Department will be unable to ascertain the cost incurred by the employer for the particular employee. If so, we disagree. The Department can ascertain reasonable value per employee by looking at the open market, or perhaps even from a presumptive chart (similar to that used for child support) that it might promulgate based on the open market. Additionally, many, if not most, employers track their health insurance costs per employee, and can readily inform the Department if asked.
[24] As indicated in the preceding footnote, we do not rule out the possibility that the Department can standardize the functioning of its employees by developing and using a chart that presumptively values health insurance for different categories of workers (e.g., single, married, married with children).
[25] Brief of Appellant at 28.
[26] RCW 51.08.178(4).
[27] See Kilpatrick, 125 Wash.2d at 230, 883 P.2d 1370. The Department also states that if it is forced to value employer-furnished health insurance, it will not be able to pay claims promptly. We decline to accept that proposition, for it implies that the Department will not take the steps necessary to properly perform duties assigned to it by the legislature.
[28] Brief of Appellant at 29.
[29] Double D Hop Ranch, 133 Wash.2d at 798, 947 P.2d 727.
[30] The Department cites a variety of statutes in support of the same point. For convenience, we refer only to RCW 39.12.010.
[31] Reply Brief of Appellant at 14.
[32] Clark County Natural Resources Council v. Clark County Citizens United, Inc., 94 Wash.App. 670, 972 P.2d 941, 944 (1999) (citing City of Redmond v. Central Puget Sound Growth Management Hearings Bd., 136 Wash.2d 38, 46, 959 P.2d 1091 (1998); City of Pasco v. Public Employment Relations Comm'n, 119 Wash.2d 504, 507, 833 P.2d 381 (1992); Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 813-14, 828 P.2d 549 (1992); Overton v. Economic Assistance Auth., 96 Wash.2d 552, 555, 637 P.2d 652 (1981)).
[33] Clark County Natural Resources Council, 972 P.2d at 944 (citing Overton, 96 Wash.2d at 555, 637 P.2d 652; Cowiche, 118 Wash.2d at 815, 828 P.2d 549); City of Redmond, 136 Wash.2d at 46, 959 P.2d 1091.
[34] 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983).
[35] Former 33 U.S.C. § 902(13).
[36] Morrison-Knudsen, 461 U.S. at 630, 103 S.Ct. 2045.
[37] Morrison-Knudsen, 461 U.S. at 632, 103 S.Ct. 2045. The Court also considered the "national average weekly wage," Morrison-Knudsen, 461 U.S. at 633-34, 103 S.Ct. 2045, and that "agencies charged with the enforcement and interpretation of the Act are entitled to deference." Morrison-Knudsen, 461 U.S. at 634-35, 103 S.Ct. 2045. The "national average weekly wage" is not of concern here, and we have already discussed deference.
[38] Morrison-Knudsen, 461 U.S. at 636, 103 S.Ct. 2045. Compare Sacred Heart Med. Ctr. v. Department of Labor and Indus., 92 Wash.2d 631, 635-36, 600 P.2d 1015 (1979).
[39] Double D Hop Ranch, 133 Wash.2d at 798, 947 P.2d 727; see also RCW 51.12.010.
[40] Kilpatrick, 125 Wash.2d at 230, 883 P.2d 1370.
[41] Morrison-Knudsen, 461 U.S. at 632, 103 S.Ct. 2045.
[42] Morrison-Knudsen, 461 U.S. at 632, 103 S.Ct. 2045.
[43] Even in 1927, we think, employers may sometimes have operated large, remote labor camps that provided food, shelter and an on-site doctor or nurse. In such an instance, we find it hard to see why health care would not be "of similar advantage" to food and shelter.
[44] 2 Arthur Larson, THE LAW OF WORKER'S COMPENSATION, § 60.12(b), at 10-635 (1990).
[45] We do not overlook that Professor Larson clearly favors the result in Morrison-Knudsen, a case in which he personally argued the government's position. He also chides courts not to disturb the way things have always been without a clear statutory basis for doing so. We reject Morrison-Knudsen for the reasons already set forth, and we think that RCW 51.08.178 gives a clear statutory basis for including within "wages" an item of in-kind consideration, such as health insurance, that a worker must replace during the period of his or her disability.
[46] Brief of Appellant at 14-15; see also Brief of Respondent at 22-23.
[47] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2568 (1969) (emphasis added). This definition also appears in the 1986 edition of the same dictionary. The Washington Supreme Court employed the 1986 edition in the recent case of Double D Hop Ranch, 133 Wash.2d at 799 n. 11, 947 P.2d 727. We quote the 1969 version because the legislature adopted RCW 51.08.178 in 1971.
[48] By motion for reconsideration made after this opinion was filed, the Department asks the court to consider two arguments never before advanced to the trial court or to this court. The court declines on the ground the arguments are untimely. Doe v. Puget Sound Blood Ctr., 117 Wash.2d 772, 780, 819 P.2d 370 (1991) (reviewing court generally will not consider theories not presented to trial court); Brin v. Stutzman, 89 Wash.App. 809, 829, 951 P.2d 291, review denied, 136 Wash.2d 1004 (1998) (same); Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992) (issue raised and argued for the first time in a reply brief is too late to warrant consideration); Bryant v. Palmer Coking Coal Co., 86 Wash.App. 204, 218, 936 P.2d 1163, review denied, 133 Wash.2d 1022 (1997) (same). The court also believes the arguments, which rest on implications from statutes never before cited or discussed, do not affect the meaning of RCW 51.08.178 as explained in the text accompanying notes 8-13.