23 P.3d 546 (2001)
106 Wash.App. 309
SOUTH BEND SCHOOL DISTRICT NO. 118; The Department of Labor and Industries, Respondents,
v.
Carla R. WHITE, Appellant.
No. 24500-1-II.
Court of Appeals of Washington, Division 2.
May 25, 2001.
*547 Frederick Wayne Lieb, Putnam & Lieb, Olympia, for Appellant.
Gilbert M. Stratton and Janet L. Smith, Craig Jessup & Stratton, Seattle, for Respondents.
Richard Steven Puz, Olympia, for Other Party.
MORGAN, J.
The issues are how to coordinate personal sick leave with time-loss compensation, and how to coordinate shared sick leave with time-loss compensation. By personal sick leave, we mean sick leave accrued by an injured worker.[1] By shared sick leave, we mean sick leave accrued by the co-worker of an injured worker, then donated to the injured worker.[2] By time-loss compensation, we mean temporary total disability payments made under Washington's Industrial Insurance Act (IIA), Title 51 RCW.[3]
Before September 1992, Carla White worked for the Bremerton School District as a special education instructor. When she left, she had two days of unused sick leave.
In early September 1992, White began work as a special education instructor for the South Bend School District (SBSD). She transferred the two days of unused sick leave from Bremerton,[4] and she accumulated an additional day of sick leave each month.[5] SBSD is a self-insured employer under the IIA.
*548 On September 12, 1992, White was injured in an on-the-job auto accident. She was off work from September 12, 1992 through March 2, 1993. She worked only half days from March 3, 1993 to May 2, 1993. She used eleven days of personal sick leave, including the two days from Bremerton and nine more days accumulated at SBSD.[6] She also used about 100 days of shared sick leave furnished by 22 of her co-workers. She received a total of $13,805 ($1,352 from personal sick leave, plus $12,453 from shared sick leave), which equaled the amount she would have earned if not injured.
White did not file a time-loss claim immediately after the accident. She explains that "she was advised by a representative of [SBSD]," soon after the accident, "that she did not have a valid workers compensation claim."[7] She further explains that she relied on that advice until March 1993, when she saw a lawyer.
In April 1993, White filed a claim for time-loss compensation. SBSD objected on the ground that she had already received personal or shared sick leave equal to the amount she would have earned if not injured. DLI nonetheless ordered SBSD to pay time-loss compensation for the period White was off work, plus loss-of-earning-power benefits for the period White was working only half-time.
SBSD appealed to the Board of Industrial Insurance Appeals (Board), before which DLI changed its position. Whereas DLI had previously ordered SBSD to pay White's claim without regard to her receipt of personal or shared sick leave benefits, DLI now took the position, according to the Board's hearing officer, that White was "entitled to [time-loss] benefits under Title 51 only to the extent the sick leave benefits may have fallen short of an actual wage replacement."[8] Relying on the majority opinion in In re Serviss,[9] the Board ruled, with one of its three members dissenting, that DLI's initial order was "correct and is affirmed."[10] Thus, the Board ordered SBSD to pay $8,755 in temporary total disability benefits for the period September 13, 1992 through March 2, 1993, and $1,639 in loss-of-earning-power benefits for the period March 3, 1993 through May 2, 1993. The Board declined to order that White repay the sick leave benefits she had received.[11]
DLI and SBSD appealed to the superior court, which reversed the Board.[12] The court reasoned that White had "received wages from her employer following her injury in the same amount she had been previously paid[,]" and that she was "not also entitled to temporary total disability benefits."[13]
White now appeals to this Court. We separately discuss personal and shared sick leave, taking personal sick leave first.

I. PERSONAL SICK LEAVE
White claims she is entitled to receive, for the same eleven days, personal sick leave benefits equal to 100 percent of her regular earnings, and also time-loss compensation equal to 62 percent of her regular earnings.[14] We disagree.
*549 A worker is entitled to time-loss compensation while temporarily but totally disabled due to an industrial injury.[15] An exception exists, however, for any period during which the worker's wages are continued in full by the employer. RCW 51.32.090(6) provides:
Should a worker suffer a temporary total disability and should his or her employer at the time of the injury continue to pay him or her the wages which he or she was earning at the time of such injury, such injured worker shall not receive any payments provided in subsection (1) of this section during the period his or her employer shall so pay such wages.
The exception applies here only if personal sick leave benefits are "wages" within the meaning of RCW 51.32.090(6). We hold that they are. Time-loss compensation is designed to reduce an injured worker's economic loss.[16] A worker does not suffer economic loss while he or she is continuing to receive personal sick leave benefits equal to the amount he or she would have earned if not injured.[17] Thus, time-loss compensation is not payable for a period during which an injured worker is receiving personal sick leave benefits equal to the amount he or she would have earned if not injured.
This reading of RCW 51.32.090(6) finds support in our opinion in Cockle v. Dep't of Labor & Indus.[18] The question there was whether an employer's payment of health insurance premiums constituted pre-injury "wages" for purposes of RCW 51.08.178. DLI injected the issue of post-injury wages by arguing that if such premiums were included within "wages," and if the employer elected to continue paying such premiums during the worker's period of disability, the worker would recover too much. We responded:
The Department argues that health insurance should not be included within "wages" because, if the employer continues the worker's health insurance during the worker's period of disability, the worker will recover twice[.] ... The facts here do not require that we address this argument, for the [employer] did not continue [the worker's] insurance during the period of her disability. We comment, however, that time-loss compensation is meant "to reflect ... lost earning capacity," not retained earning capacity. When an injured worker retains his or her health insurance, he or she retains that part of his or her earning capacity, and his or her time-loss compensation should be computed accordingly.[19]
Our reading of RCW 51.32.090(6) finds even better support in the Supreme Court's opinion in Cockle v. Dep't of Labor & Indus.[20] After quoting with approval what we said in Cockle, the Supreme Court added:
We, too, read RCW 51.32.090(6) to mean that, to the extent employer-provided "wages"whether in the form of money, board, housing, fuel, or health care coverageare continued during temporary total disability, time-loss compensation is reduced accordingly. Title 51 RCW was intended to "reduc[e] to a minimum" an injured worker's "economic loss." RCW 51.12.010. Logically, any portion of "wages" that injured workers continue to *550 enjoy during their disability period is not part of their "economic loss."[21]
Our reading of RCW 51.32.090(6) does not mean that a worker must exhaust his or her personal sick leave before receiving time-loss compensation. As DLI correctly points out:
RCW 51.32.090(6) does not require Ms. White to deplete her sick leave before receiving time loss. The statute only prevents Ms. White from simultaneously receiving 100% of her wages in sick leave and time loss benefits. Ms. White, alone, has the right to decide whether to use her sick leave (100% of her wages at the time of injury) or receive time loss compensation (62% of her date of injury wages). She is simply not entitled to both.[22]
Our reading does not mean that a worker cannot receive both time-loss compensation and personal sick leave benefits, so long as the total does not exceed the amount the worker would have earned if not injured. As DLI correctly points out:
Although Ms. White's sick leave benefits provided her with 100% of her date of injury wages, some employers pay only a portion of the worker's full salary when sick leave is taken. In such a case, the worker can choose to receive time loss compensation and sick leave, so long as the combination of the two doesn't exceed the worker's date of injury wages.
In the case of an illness or injury covered by workers' compensation, employees can use accrued sick/emergency leave to make up the difference between time loss payments and full salary.
Seattle Sch. Dist. No. 1 v. Intern. Union of Operating Engineers, 88 Wash.App. 205, 208, 944 P.2d 1062 (1997); see also Department Claims Administration Policy 5.12(1)(c).[23]
Our reading is consistent with the dissent in In re Serviss.[24] The question there was "whether RCW 51.32.090(6) legally precludes a claimant from receiving time-loss compensation for those periods of time he received sick-leave pay at his regular salary rate from his employer."[25] Answering yes, the dissenting member reasoned:
[T]he basic purpose of temporary disability compensation is to replace the money a worker loses by reason of temporary inability to work due to an industrial injury. However, where a worker receives his normal salary from his employer in spite of his inability to work, he has not lost anything financially and there is nothing to replace, and the basic purpose of temporary disability compensation is not met.[26]
Our construction rejects the majority opinion in Serviss. At the core of that opinion is a distinction between (a) the employer who volunteers to pay sick leave benefits and (b) the employer who is required by the employment contract to pay sick leave benefits. According to the Serviss majority, the first employer pays "wages" within the meaning of RCW 51.32.090(6),[27] but the second employer does not.
We reject this distinction for several reasons. First, it does not appear in RCW 51.32.090(6). That statute precludes time-loss compensation when an employer "continue[s] to pay [an injured worker] the wages which he or she was earning at the time of such injury[.]"[28] Nothing in its language suggests that the term "wages" was meant to include volunteered payments, but exclude earned (i.e., contractually-required) payments.
Second, the distinction seems contrary to any reasonable interpretation of legislative intent. By hypothesis, volunteered payments are not made pursuant to the contract of employment. By hypothesis, earned (i.e., *551 contractually required) payments are made pursuant to the contract of employment. Thus, the distinction characterizes as "wages" payments that are not made pursuant to the contract of employment, but declines to characterize as "wages" payments that are made pursuant to the contract of employment. This seems nonsensical, and we cannot believe the legislature so intended.
Third, the distinction rests on a faulty analogy. The Serviss majority analogized the worker who receives contractually required sick leave benefits to the worker who draws on a personal savings account or other personal asset, the contents of which he or she previously has received and "banked." It is our view, however, that a worker does not receive or "bank" personal sick leave benefits until the employer pays them.[29]
Having decided that personal sick leave benefits are "wages" within the meaning of RCW 51.32.090(6), and that White is not entitled to receive a total of personal sick leave benefits and time-loss benefits that exceeds the amount she would have earned if not injured, we briefly address remedy. One possibility is to order DLI to reduce White's time-loss award by eleven days. An alternative possibility is to leave the time-loss award as it is, but order SBSD (in its capacity as a self-insured employer under Title 51) to pay eleven days of White's time-loss award to SBSD (in its capacity as sick leave provider), so that SBSD (in its capacity as sick leave provider) can restore a proper amount of sick leave to White's personal sick leave account.[30] Neither remedy requires SBSD to pay more than it should, and neither remedy permits White to receive more than she should. Only the second remedy recognizes that sick leave payments are often made more quickly than time-loss payments, and effectively gives White the right to choose between time-loss, sick leave, or a combination not exceeding the amount she would have earned if not injured. We conclude (1) that White may elect the second remedy by notifying DLI and SBSD in writing within 15 days after mandate issues under RAP 12.5; but (2) that if White fails to so elect, DLI shall reduce her time-loss award by eleven days.

II. SHARED SICK LEAVE
Shared sick leave is authorized and described in RCW 41.04.650-.670. It is available to a school district employee[31] at the discretion of his or her agency head,[32] assuming the district's board of directors has adopted the necessary policy.[33] It permits an ill or injured employee to receive and use sick leave originally accrued by a co-employee, so long as certain conditions are fulfilled.[34]
DLI and SBSD claim that shared sick leave benefits constitute "wages" within the meaning of RCW 51.32.090(6). As already seen, however, that statute precludes time-loss benefits when "a worker suffer[s] a temporary total disability and ... his or her employer ... continue[s] to pay him or her the wages which he or she was earning at the time of such injury[.]"[35] By its terms, it operates when the employer continues to pay the wages that the injured worker was earning at the time of injury, but not when the employer pays wages that someone else earned and then donated to the injured *552 worker. Accordingly, it does not operate when the employer pays shared sick leave benefits.
DLI and SBSD offer no other reason to think that shared (i.e., donated) sick leave benefits affect time-loss compensation, and we think it apparent, for at least two reasons, that the legislature did not intend shared sick leave benefits to affect time-loss compensation. First, the legislature expressly provided that a worker should not receive shared leave benefits until he or she "has diligently pursued and been found to be ineligible for benefits under chapter 51.32 RCW."[36] Necessarily then, "benefits under chapter 51.32 RCW"[37] are to be calculated and paid without regard to shared sick leave. Second, the legislature did not empower DLI or the Board to deal with shared sick leave. Each has specific authority to administer Title 51,[38] but not general authority to administer all laws.[39] The legislature omitted from Title 51 any reference to shared sick leave benefits, directing instead that such benefits be codified in Title 41.[40] For both reasons, the inescapable conclusion is that the legislature did not intend shared sick leave benefits to affect time-loss compensation.
Based on the foregoing, we hold that DLI and the Board may not consider shared leave benefits when calculating and awarding time-loss compensation. We have no occasion to consider, for it is not raised here, the question whether an employer can sue an injured worker to obtain restitution of shared sick leave benefits that the employer paid contrary to the terms of RCW 41.04.665(1)(e).[41] We have no occasion to consider, for it is not raised here, the question whether DLI could properly honor an employer-worker agreement calling for the worker to reimburse the employer, out of time-loss compensation calculated and awarded without reference to shared sick leave benefits, for shared sick leave benefits that the employer paid prematurely. And finally, we have no occasion to consider, for it is not raised here, the question whether an employer who pays shared sick leave prematurely might have a lien of some kind against time-loss compensation calculated and awarded without reference to shared sick leave benefits.
We reverse the Board's refusal to consider personal sick leave benefits, affirm the Board's refusal to consider shared sick leave benefits, and remand to the Board for further proceedings consistent herewith.
We concur: ARMSTRONG, C.J., HUNT, J.
NOTES
[1] See RCW 28A.400.300.
[2] See RCW 41.04.665.
[3] See RCW 51.32.090.
[4] See RCW 28A.400.300 (last paragraph).
[5] See RCW 28A.400.300(2)(c).
[6] White accumulated nine days at SBSD because SBSD allowed one day of sick leave even for months when she was on sick leave. Thus, she accumulated one day per month from September to May.
[7] Br. of Resp't (DLI) (App. A, Stipulation of Facts) at 1-2.
[8] Clerk's Papers (CP) at 59 (Proposed Decision and Order at 6).
[9] In re Serviss, Bd. of Indus. Ins. Appeals No. G-709237 (December 3, 1981).
[10] CP at 8, 10. Peculiarly, the introductory paragraph of the Board's order says, "Reversed and remanded." CP at 2. That sentence is contrary to the rest of the order, see, e.g., CP at 7-8 (Conclusions of Law 3-6), and appears to have been included inadvertently.
[11] The Board reasoned that it did "not have jurisdiction to determine whether, under Title 41, RCW, a worker has an obligation to repay to an employer the value of leave used by the worker for a disability where the worker subsequently is determined to be entitled to time loss compensation... under the industrial insurance laws." CP at 8.
[12] CP (Supplemental) at 208.
[13] Id. at 253.
[14] RCW 51.32.060(1)(h); Br. of Appellant at 14, n. 2.
[15] RCW 51.32.090(6).
[16] Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 815 n. 6, 16 P.3d 583 (2001); Hubbard v. Dep't of Labor & Indus., 140 Wash.2d 35, 44, 992 P.2d 1002 (2000); Double D Hop Ranch v. Sanchez, 133 Wash.2d 793, 798, 947 P.2d 727 (1997); Cockle v. Dep't of Labor & Indus., 96 Wash.App. 69, 81, 977 P.2d 668, review granted, 139 Wash.2d 1014, 994 P.2d 847 (1999), aff'd in part, modified in part, and remanded, 142 Wash.2d 801, 16 P.3d 583 (2001).
[17] Cf. Cockle, 142 Wash.2d at 815 n. 6, 16 P.3d 583 ("Logically, any portion of `wages' that injured workers continue to enjoy during their disability period is not part of their `economic loss.'"); Cockle, 96 Wash.App. at 81, 977 P.2d 668 ("[T]he legislature intended that `wages' include only those items that the employer was supplying before injury, and that the worker must replace, while disabled, out of time-loss compensation.").
[18] Cockle, 96 Wash.App. at 69, 977 P.2d 668.
[19] Cockle, 96 Wash.App. at 81, 977 P.2d 668 (quoting Double D Hop Ranch, 133 Wash.2d at 798, 947 P.2d 727).
[20] Cockle, 142 Wash.2d 801, 16 P.3d 583.
[21] Cockle, 142 Wash.2d at 815 n. 6, 16 P.3d 583. (emphasis in original).
[22] Br. of Resp't (DLI) at 23 (embolding in original).
[23] Br. of Resp't (DLI) at 24.
[24] In re Serviss, No. G-709237.
[25] In re Serviss, No. G-709237, at 4.
[26] In re Serviss, No. G-709237, at 5.
[27] We express no opinion on the validity of this proposition.
[28] RCW 51.32.090(6).
[29] This does not mean that sick leave benefits may not vest, contingently or otherwise, before they are paid. Vesting without payment, however, does not mean that the worker owns the benefits in the same way as a personal savings account or other personal asset.
[30] Cf. Office of Financial Management, State Administrative and Accounting Manual, section 25.40.40. It states, in subsection (c)(6), that "[i]f an employee elects to receive regular salary or sick leave for a disability period where time loss payments were also received, the agency must recover the time loss payments." It also sets forth procedures by which an agency is to do that. Although it lacks the force of law, and it does not directly apply to school districts as opposed to state agencies, it illustrates one effort to coordinate sick leave with time-loss. Office of Fin. Mgmt., State Admin. & Accounting Manual, available at http://www.ofm.wa.gov/policy/saamintro.htm.
[31] RCW 41.04.655(1), (2).
[32] RCW 41.04.665(1), (2).
[33] RCW 28A.400.380.
[34] RCW 41.04.665.
[35] RCW 51.32.090(6).
[36] RCW 41.04.665(1)(e).
[37] RCW 41.04.665(1)(e).
[38] See Kingery v. Dep't of Labor & Indus., 132 Wash.2d 162, 168-72, 937 P.2d 565 (1997); Marley v. Dep't of Labor & Indus., 125 Wash.2d 533, 539, 886 P.2d 189 (1994); see also RCW 51.28.080.
[39] See Kingery, 132 Wash.2d at 171-72, 937 P.2d 565; Callihan v. Dep't of Labor & Indus., 10 Wash.App. 153, 155-56, 516 P.2d 1073 (1973) ("An aggrieved person, including an injured workman, may appeal to the board from an `order, decision, or award of the department.'") (citing RCW 51.52.060).
[40] Laws of 1989, ch. 93, §§ 1-5.
[41] Nor do we consider any of the many questions likely to arise in such a suit, such as whether the donating co-worker is the real party in interest, CR 17; whether the donating co-worker must be joined, CR 19; whether the employer or the worker bears the burden of ascertaining the non-availability of time-loss compensation in accordance with RCW 41.04.665(1)(e); and whether the employer, if it misadvises the worker, is subject to estoppel.