Compensation Appeals Board
No. 2002-344

APPEAL OF TIMOTHY CARNAHAN
(New Hampshire Compensation Appeals Board)

Argued: March 12, 2003
Opinion Issued: April 29, 2003

*Moquin & Daley, P.A.*, of Manchester (*Terrence J. Daley* on the brief and orally), for the petitioner.

*Desmarais, Ewing & Johnston, PLLC*, of Manchester (*Scott Ewing* and *Heather G. Silverstein* on the brief, and *Mr. Ewing* orally), for the respondent.

DUGGAN, J. The petitioner, Timothy Carnahan, appeals a decision of the New Hampshire Compensation Appeals Board (board) regarding the determination of his average weekly wage for the purpose of calculating workers' compensation benefits. We affirm.

Carnahan was a self-employed cross-country truck driver and mover. He worked as an independent contractor for the McLaughlin Transportation Company (McLaughlin), paying all of his own expenses. On September 15, 2000, Carnahan injured his back and was unable to return to work. He filed a claim for temporary total disability benefits with his insurer, Vanliner Insurance Company (Vanliner). The insurer accepted the claim and began paying benefits.

On June 4, 2001, Carnahan requested a hearing before the department of labor to contest Vanliner's calculation of his disability benefit. He submitted his tax documents for the year 1999 and 2000, but did not include information for any other year. The tax returns indicated that he claimed gross receipts totaling $129,729 for the year 2000. During that same year, Carnahan claimed business deductions totaling $102,184. These deductions included business expenses for motels, uniforms, laundry service, meals and entertainment, and for the depreciation of his truck. The hearing officer calculated Carnahan's average weekly wage by dividing his net profit of approximately $27,545 by the 38 weeks he worked in 2000. The officer derived Carnahan's total disability benefit from this average weekly wage. *See* RSA 281-A:28 (1999).

Carnahan appealed this decision to the board, which unanimously affirmed. On appeal to this court, he argues that his expenses for sundries such as food, lodging, and fuel are "wages" under RSA 281-A:2, XV (Supp. 2002) and should be included in the calculation of benefits. He also argues that his deduction for the depreciation of his truck and for expenses incurred after his injury should not have been included in the calculation. In the alternative, he argues that RSA 281-A:15, I (Supp. 2002) requires

the board to use his gross income of $129,728 instead of his net profit as the basis for determining his disability benefits.

"We will not set aside the board's decision, except for errors of law, unless the petitioner has shown it by a clear preponderance of the evidence to be clearly unreasonable or unjust." *Appeal of Cote*, 144 N.H. 126, 128 (1999). We construe workers' compensation statutes in favor of the employee, but only to the extent the statutory language reasonably allows. *Id.* at 130.

We turn to Carnahan's last argument first. RSA 281-A:15 sets forth the methods for computation of a claimant's "average weekly wage" for purposes of compensation benefits. Unless special circumstances are present, the statute computes the average weekly wage by dividing "gross earnings" over a period of 26 to 52 weeks (in order to yield a result most favorable to the employee) by that number of weeks. *See* RSA 281-A:15, I; *Appeal of Gilbert*, 142 N.H. 842, 844 (1998).

At issue here is the meaning of "gross earnings," which is not defined by the statute. When examining statutory language, we construe the statute as a whole to avoid an absurd result. *See DeVere v. Attorney General*, 146 N.H. 762, 768 (2001). Carnahan argues that "gross earnings" is synonymous with his gross income for tax purposes. This construction, however, produces an absurd result. An independent contractor with a gross income of $200,000 who incurs $150,000 in business expenses would have "gross earnings" of $200,000. At the same time, an employee who does the same work, receiving a salary of $50,000, while his employer covers business expenses of $150,000, would have only $50,000 in "gross earnings." Nothing in the statute suggests that self-employed contractors should be entitled to such a windfall.

In this case, Carnahan had to incur business expenses of $102,184 to produce a gross income of $129,729. Because Carnahan has produced no evidence, other than his tax returns, that would suggest an alternate method of calculating his income, we agree that the board was correct to use his net profit of approximately $27,545 as his "gross earnings."

Carnahan's second argument is that the board misconstrued the definition of "wages" in RSA 281-A:2, XV. This statute reads:

> "Wages" means, in addition to money payments for services rendered, the reasonable value of board, rent, housing, lodging, fuel or a similar advantage received from the employer and gratuities received in the course of employment from others than the employer; but "wages" shall not include any sum paid by the employer to the employee to cover any special expenses incurred by the employee because of the nature of the employment.

RSA 281-A:2, XV.

Carnahan argues that this definition required the board to include his expenses for motels, fuel, food, clothing, and laundry within its calculation of his average weekly wage. We note that RSA 281-A:15, I, refers to "gross earnings," and not "wages," as the basis for computing an "average weekly wage." Even assuming, however, that an employee's "gross earnings" includes his "wages" under RSA 281-A:2, XV, we disagree with Carnahan's interpretation of the statute.

■ Because Carnahan had deducted all the disputed costs on his tax returns as business expenses, the board could conclude that these were "special expenses incurred ... because of the nature of [his] employment," and thus excluded from wages. *See* RSA 281-A:2, XV. Carnahan presented no additional evidence to prove that these expenses qualified as "wages" because they constituted an economic "advantage" to him. *See id.* Moreover, allowing a self-employed contractor to include his business expenditures as "wages" would lead to the same absurd windfall inherent in Carnahan's suggested definition of "gross earnings," as a salaried employee cannot include employer-reimbursed business expenses as "wages." *See id.* ("'Wages' ... shall not include any sum paid by the employer to the employee to cover any special expenses incurred by the employee because of the nature of the employment."). For these reasons, the board correctly found that Carnahan's deducted expenses for meals, lodging, fuel, clothing, and laundry were not "wages" during the year 2000.

■ Carnahan also argues that his deduction for the depreciation of his truck should not count against his "wages" or "gross earnings" because it was not an actual out-of-pocket expense. We disagree. The rationale of depreciation deductions is that "the property the taxpayer is using in his trade or business ... is wearing out and that deterioration is a cost of doing business." D. Q. POSIN, FEDERAL INCOME TAXATION 310 (1983). Thus, the depreciation Carnahan reported was the functional equivalent of his out-of-pocket business expenses for fuel, laundry, and meals, and the board was correct to treat them identically for workers' compensation purposes.

Finally, Carnahan contends that some of his business expenses were incurred after his September 15, 2000 injury, and should not count against his "wages" or "gross earnings" because he stopped earning money at that time. However, the "burden to furnish wage information for the department's calculation resides with the claimant." *Gilbert*, 142 N.H. 844. Carnahan failed to provide any timetable for his wages or expenses for the year 2000. Because the board had no independent duty to determine which

expenses Carnahan may have incurred after his injury, we need not consider the merits of this claim. *Id.*

*Affirmed.*

BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.