Compensation Appeals Board
No. 2004-503

## APPEAL OF PERRY MACDONALD
### (New Hampshire Compensation Appeals Board)

Argued: May 18, 2005
Opinion Issued: July 18, 2005

*Coolidge, Mathieu, Barrington & Couture, PLLC*, of Somersworth (*Gregory R. Couture* on the brief and orally), for the petitioner.

*Law Offices of John B. Schulte*, of Manchester (*John B. Schulte* on the brief and orally), for the respondents.

BRODERICK, C.J. The petitioner, Perry MacDonald, appeals a decision of the New Hampshire Compensation Appeals Board (board) that per diem payments he received during his employment with respondent, Nelson Communication Services, Inc. (NCS), are not included in calculating his average weekly wages under RSA 281-A:15, I (Supp. 2004). Liberty Mutual Insurance, Inc. (Liberty Mutual), workers' compensation insurance carrier for NCS, is the second respondent. We affirm.

The record supports the following facts. MacDonald was a site supervisor for NCS, a company that erected telecommunications antennas throughout New England. As site supervisor, he was responsible for planning and erecting antennas on sites ranging from unimproved woodland to church steeples. He supervised teams of varying size, usually between two and six individuals. When NCS hired him, it presented two remuneration options. He could select either an "hourly wage and a per diem payment" for jobs performed outside a sixty-five mile radius from either the home office in Albany or his home, or a higher "straight salary" with no per diem. Like most employees, he selected the lower hourly wage plus per diem. The per diem payment was seventy dollars for each night spent in the field. No per diem was paid when an employee either could spend the night at home because it was within sixty-five miles of the job site, or did spend the night at home. NCS did not require employees to produce records or receipts for actual expenditures. Consequently, employees often shared rooms and meals so as to minimize expenditures and retain as much of their per diem payment as possible. Neither MacDonald nor NCS appeared to treat per diem payments as income reportable to federal tax authorities.

On April 15, 2002, MacDonald suffered a lower back injury in the course of employment, for which he subsequently filed a workers' compensation claim with the department of labor. A dispute arose as to the average weekly wage upon which MacDonald's award was to be calculated. A hearing officer concluded that the average weekly wage should include the per diem payments. He based his decision on the language of the statute that defines "wages" for the purposes of workers' compensation benefits:

> "Wages" means, in addition to money payments for services rendered, the reasonable value of board, rent, housing, lodging, fuel or a similar advantage received from the employer and gratuities received in the course of employment from others than the employer; but "wages" shall not include any sum paid by the employer to the employee to cover any special expenses incurred by the employee because of the nature of the employment.

RSA 281-A:2, XV (Supp. 2004). The hearing officer determined that because the per diem payments represented "a quantified amount of the reasonable value of food and lodging paid to the claimant as contemplated in the negotiated contract of hire," they fell under the first part of section XV, and did not constitute "special expenses."

Liberty Mutual appealed to the board. After a *de novo* hearing, the board found that the per diem payments were reimbursements made to cover employment-related "special expenses" under the second part of RSA 281-A:2, XV. As a result, the board concluded that MacDonald's average weekly wage should be calculated without including any per diem payments. The board denied MacDonald's motion to reconsider, and this appeal followed.

We will uphold the board's decision unless there has been an error of law, or its findings or conclusions are shown, by a clear preponderance of the evidence, to be clearly unreasonable or unjust. *Appeal of Carnahan*, 149 N.H. 433, 435 (2003); *see Appeal of Chickering*, 141 N.H. 794, 796 (1997). In reviewing the decision, we are confined to the hearing record and will not substitute our judgment for the board's as to the weight of the evidence on questions of fact. *Appeal of Lakeview NeuroRehabilitation Ctr.*, 150 N.H. 205, 208 (2003).

On appeal, MacDonald contends that the board erroneously: (1) interpreted our decision in *Carnahan* and thus erred in concluding that the per diem payments were "special expenses"; and (2) excluded the value of the per diem payments in calculating the average weekly wage. MacDonald contends, and we will assume for the purposes of this appeal, that "wages" as defined in RSA 281-A:2, XV are the basis upon which an employee's average weekly wage is calculated pursuant to RSA 281-A:15, I. *Cf. Carnahan*, 149 N.H. at 436.

We have previously addressed whether certain expenses should be included in the definition of "wages." In *Carnahan*, the claimant was an independent trucking contractor who derived $129,729 in gross income from his contracts, and claimed his expenses of $102,184, including such items as food, lodging, laundry and fuel, as business deductions. For purposes of his workers' compensation claim, Carnahan attempted to characterize his gross income of $129,729 as his gross earnings, without any deduction for his expenses.

Under the relevant sections of RSA 281-A:15, I, "gross earnings" over a given number of weeks are divided by that number of weeks to furnish an average weekly wage for the purpose of calculating a workers' compensation award. *See* RSA 281-A:15, I(a), (b). Characterizing Carnahan's gross income as his gross earnings would have increased by nearly a factor of five the average weekly wage upon which his award was

calculated, because the gross earnings would not have been reduced by his expenses. We rejected this characterization on the grounds that it would lead to the absurd result of Carnahan receiving an award based upon gross earnings of approximately five times those of another employee who received a salary equal to Carnahan's net profit of $27,545, but whose gross earnings were only $27,545 because his employer paid $102,184 for business expenses incurred because of the nature of the employment. *Carnahan*, 149 N.H. at 434-35.

Carnahan also argued that his expenses for food, lodging, and the like constituted an economic "advantage" to him, and should be counted as "wages." We disagreed, holding that such expenses were not an economic "advantage," but rather "special expenses" incurred because of the nature of his employment. Such expenses are not included as "wages" under RSA 281-A:2, XV. *Id.* at 436.

MacDonald attempts to distinguish *Carnahan* by arguing that: (1) he was not a self-employed contractor, but rather an employee; (2) Carnahan's expenses were his own deductible business expenses, and payments to cover them were distinguishable from the per diem payments MacDonald received; and (3) Carnahan attempted to inflate his gross earnings by including his expenses as part of his income, whereas MacDonald did not.

MacDonald's first two arguments point out factual distinctions that do not amount to fundamental differences, because the issue is not the status of the claimant or the source of the payments, but whether a given payment should fall under the statutory definition of "wages." In both cases, the monies in question were used to cover "special expenses incurred ... because of the nature of the employment"; these included food, lodging, and other expenses occasioned solely by work. *See id.* As we stated in *Carnahan*, "a salaried employee cannot include employer-reimbursed business expenses as 'wages.'" *Id.* MacDonald's third argument to distinguish *Carnahan* falls short because, in fact, inflating his "gross earnings" is exactly what MacDonald is seeking to accomplish by including per diem payments, made to cover "special expenses," as wages.

MacDonald next argues that his per diem payments paid for food and lodging, and thus constituted the "reasonable value of ... [an] advantage received from the employer" that is included in the definition of "wages" under RSA 281-A:2, XV. In support of this contention, MacDonald argues that: (1) employees opted for this method of compensation, and therefore the per diem payments should be considered part of the wage structure; (2) employees were able to spend less than the amount of the per diem payments they received and keep the balance, so those payments amounted to supplementary income; (3) employees were given the same

amount even if their expenses were greater than the per diem amount, and therefore the per diem payments cannot be considered reimbursement for business-related expenses; (4) NCS did not require employees to keep receipts or records of their expenditures, and therefore the per diem payments cannot be considered reimbursement; and (5) employees did not attempt to deduct their per diem payments or expenses from their income on tax filings, so they did not categorize those payments as business expenses.

The mere fact that NCS employees opted for this method of compensation does not convert per diem payments into "wages." The statute sets forth two kinds of remuneration that can be considered wages in the context of the present case: "money payments for services rendered" and "the reasonable value of board, rent, housing, lodging, fuel or a similar advantage received from the employer." It explicitly excludes from the definition of "wages" "any sum paid by the employer to the employee to cover any special expenses incurred by the employee because of the nature of the employment." RSA 281-A:2, XV. The "reasonable value" clause refers to instances where the employer furnishes some "in kind" advantage, such as in-house board, lodging, or utilities that the employee would otherwise have to purchase, as part of his compensation package. The "special expenses" clause distinguishes such advantages from the per diem payments at issue here. Those per diem payments are "sums paid," and they are paid only when the employee is likely to incur "special expenses" while on the road for work.

The fact that NCS provided a standard per diem payment, regardless of how much employees actually spent on food and lodging, and required no receipts or subsequent accounting, does not bring these payments under the definition of "wages." As with any standardized sum paid to cover a "special expense," some surplus may be retained if the employee is frugal, and some loss may be suffered if the employee is extravagant. Just as a mileage-rate reimbursement is not necessarily calculated to cover the costs of driving the least fuel-efficient vehicle on the road, NCS' per diem payments were not designed to cover "a seven course meal" while an employee was working in the field. Requiring no receipts is presumably reflective of NCS' determination that payments are standardized in order to eliminate the need for any further accounting.

MacDonald argues that, had he been able to demonstrate that his per diem payments exceeded his actual expenses through record keeping, the board decided the excess would be included as part of his wages. Even if we assume that the board did in fact so decide, we need not further address that issue because MacDonald did not make such a demonstration.

Finally, the fact that MacDonald did not report his per diem payments as a deduction from his income for tax purposes does not change our view. Neither MacDonald nor NCS reported the per diem payments as income for tax purposes. Just as the claimant attempted to do in *Carnahan*, MacDonald is seeking to capitalize on a contradiction. There the claimant sought to exclude his expenses as deductions from his income for tax purposes, but to include them in his income for workers' compensation purposes. *Carnahan*, 149 N.H. at 435. MacDonald similarly wishes to exclude his per diem payments for tax purposes by not reporting them as income, yet include them as wages for the purpose of calculating his workers' compensation award. We fail to see any justification for this.

█ We hold, therefore, that the board did not err in deciding that the per diem payments received by MacDonald were not part of his "wages," but rather were reimbursements made to cover employment-related "special expenses." Consequently, the board did not err in excluding the per diem payments from MacDonald's gross earnings for the purpose of calculating his average weekly wage under RSA 281-A:15, I.

*Affirmed.*

NADEAU, DALIANIS, DUGGAN and GALWAY, JJ., concurred.