Compensation Appeals Board
No. 2008-424

APPEAL OF BRIAN D. GAGNON & a.
(New Hampshire Compensation Appeals Board)

Submitted: January 15, 2009
Opinion Issued: February 20, 2009

*Stewart & Murphy, P.A.*, of Manchester (*Edward W. Stewart, Jr.* on the brief), for the petitioner.

*Law Offices of John B. Schulte*, of Manchester (*John B. Schulte* on the brief), for the respondent.

DUGGAN, J. The petitioners, Brian D. Gagnon and Douglas F. George, Sr., appeal a ruling of the New Hampshire Compensation Appeals Board (CAB). The petitioners claim that the CAB improperly calculated their average weekly wages for purposes of determining disability benefits. We affirm.

The record supports the following facts. The petitioners were employees of Ouellette Plumbing and Heating Corporation (Ouellette) and members of the Local Union 131 (Local 131) of the United Association of Plumbers and Pipefitters. Both petitioners sustained injuries while working. Ouellette's insurer accepted their claims for disability benefits. The benefits paid to the petitioners were based upon an average weekly wage calculated using an hourly wage of $25.20 for Gagnon and $28.98 for George, who received more as a foreman. In separate cases, the department of labor

denied the petitioners' request to include an additional $14.80 per hour, which represented their hourly union benefits paid by the employer into the national pension fund, Local 131 annuity fund, Local 131 pension fund, health and welfare fund, international training fund, education fund and labor management fund. The petitioners appealed to the CAB and the cases were consolidated.

The CAB rejected the petitioners' arguments and found that the calculation of average weekly wages was to be based upon their pre-tax wages. Using *Morrison-Knudson Constr. Co. v. Director, OWCP*, 461 U.S. 624 (1983), as guidance, the CAB found that payments to various union funds were not a "similar advantage" to those listed as wages in RSA 281-A:2, XV (Supp. 2008). Rather, the CAB found the payments were similar to traditional benefit packages offered by non-union employers, and were therefore not included in the calculation of average weekly wages. The petitioners filed a motion for reconsideration, which was denied, and appealed to this court.

On appeal, the petitioners argue that the CAB erred by: (1) basing average weekly wages upon pre-tax wages as opposed to total earning capacity; and (2) finding that Ouellette's contributions to union funds are not a "similar advantage" under RSA 281-A:2, XV and therefore not wages. In the alternative, the petitioners argue that their average weekly wages should include payments "to funds which provide a direct financial benefit," *i.e.*, annuity, local pension and national pension funds.

We will not set aside the board's decision, except for errors of law, unless the petitioners have shown by a clear preponderance of the evidence that the decision is clearly unreasonable or unjust. *Appeal of Carnahan*, 149 N.H. 433, 435 (2003). We construe workers' compensation statutes in favor of the employee, but only to the extent the statutory language reasonably allows. *Id.*

We turn to the petitioners' first argument, that average weekly wages should be based upon earning capacity. They argue that, because the purpose of the Workers' Compensation Law is to compensate employees who have lost earning capacity, the resulting benefits should encompass all lost earning capacity. *See Armstrong v. Lake Tarleton Hotel*, 103 N.H. 450, 453 (1961) ("The Workmen's Compensation Law is designed to afford compensation for loss of earning capacity due to injury arising out of and in the course of employment."). In support, the petitioners cite *Armstrong* and later cases that held a determination of a disability involves a combined loss of work capacity and earning capacity. *See Appeal of Woodmansee*, 150 N.H. 63, 67 (2003); *Armstrong*, 103 N.H. at 453-54. The respondent argues that those cases pertain only to the determination of whether an individual *qualifies* for benefits, not the manner of benefit *calculation*.

■ RSA 281-A:15 (Supp. 2008) dictates how to compute a worker's "average weekly wages" for compensation benefits. "Unless special circumstances are present, the statute computes the average weekly wage by dividing 'gross earnings' over a period of 26 to 52 weeks . . . by that number of weeks." *Carnahan*, 149 N.H. at 435. The issue here is whether "gross earnings" is the same as earning capacity, and therefore includes payments to union funds.

■ We agree with the respondent that earning capacity, in this context, pertains only to a claimant's *eligibility* for benefits. *See Woodmansee*, 150 N.H. at 67; *Armstrong*, 103 N.H. at 453. The calculation of those benefits, however, is based upon a claimant's gross earnings, which is a separate and distinct concept from earning capacity. As we held in *Carnahan*, "gross earnings" is not synonymous with wages or other benefits, but rather represents a claimant's "net profit." *Carnahan*, 149 N.H. at 435. Net profit, in this case, would be the petitioners' pre-tax hourly wage. *See id.*

Indeed, the collective bargaining agreement (CBA) under which the petitioners worked supports the same conclusion. The $40.00 per hour rate ($43.78 in George's case) is labeled as the "total package." Each of the fund contributions at issue here is listed under "Benefits," and is paid by the employer directly into the union funds. Additional union funds that are not at issue receive contributions that are deducted from an employee's "wages," *i.e.*, the pre-tax hourly pay of $25.20 for Gagnon and $28.98 for George. Thus the CBA, like the statute, differentiates between benefits and wages.

The petitioners next argue that union fund contributions are the type of in kind wages included in RSA 281-A:2, XV. RSA 281-A:2, XV provides:

> "Wages" means, in addition to money payments for services rendered, the reasonable value of board, rent, housing, lodging, fuel or a similar advantage received from the employer and gratuities received in the course of employment from others than the employer; but "wages" shall not include any sum paid by the employer to the employee to cover any special expenses incurred by the employee because of the nature of the employment.

Specifically, the petitioners argue that the fund contributions are "a similar advantage received from the employer." They distinguish the reasoning of the United States Supreme Court in *Morrison-Knudsen*, 461 U.S. 624, and urge us to follow instead the Washington Court of Appeals and Maine Supreme Judicial Court in, respectively, *Cockle v. Dept. of Labor and Indus.*, 977 P.2d 668 (Wash. Ct. App. 1999), *aff'd and modified*, 16 P.3d 583,

594 (Wash. 2001), and *Ashby v. Rust Engineering Co.*, 559 A.2d 774 (Me. 1989). The respondent, however, urges us to adopt the reasoning in *Morrison-Knudson.*

The interpretation of a statute is a question of law, which we review *de novo. N.H. Dep't of Envtl. Servs. v. Marino*, 155 N.H. 709, 713 (2007). We are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *DaimlerChrysler Corp. v. Victoria*, 153 N.H. 664, 666 (2006). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Id.* When the language of a statute is clear on its face, its meaning is not subject to modification. *Dalton Hydro v. Town of Dalton*, 153 N.H. 75, 78 (2005).

■ We agree with the respondent that union fund contributions are not "a similar advantage received from the employer." We interpreted the same provision in *Appeal of MacDonald*, 152 N.H. 443 (2005). The petitioner in that case argued that per diem payments were the sort of in kind benefits included in RSA 281-A:2, XV, and not the reimbursement for "special expenses" the statute excludes. *Id.* at 445. We stated that the included in kind advantages, such as housing or utilities, were those "that the employee would otherwise have to purchase." *Id.* at 447. We held the per diem payments were "special expenses" and therefore excluded them from the calculation of average weekly wages. *Id.* at 448. We noted that, because the petitioner did not report the per diem payments for tax purposes, including them in the calculation of average weekly wages would grant him a windfall. *Id.; see also Carnahan*, 149 N.H. at 435 (holding self-employed contractor's average weekly wage is based upon gross income *after* deducting business expenses). The petitioners here do not report the additional $14.80 as income for tax purposes, though they are required to pay taxes upon the subsequent disbursement of some funds. Because employer contributions to union funds are non-taxed benefits, they are not included in the calculation of average weekly wages.

*Morrison-Knudsen*, upon which both the CAB and respondent rely, interpreted "similar advantage" in the definition of wages within the Longshoremen's and Harbor Workers' Compensation Act, the language of which is nearly identical to that in RSA 281-A:2, XV. *Morrison-Knudsen*, 461 U.S. at 626, 629. The Court held that the Act's language, legislative history, and underlying policies all supported the conclusion that employer contributions to union trust funds were not wages for purposes of computing compensation benefits. *Id.* at 637. The Court gave great weight to the fact that, despite Congress' almost certain knowledge of such employer-funded fringe benefits as part of employee compensation, Congress had not

seen fit to amend the statute since its enactment in 1927 to include such benefits in the definition of wages. *Id.* at 632. Though not binding, we find the reasoning of *Morrison-Knudsen* to be persuasive.

RSA 281-A:2 has been amended multiple times since it was enacted in 1988 as "a rewriting of the workers' compensation law in clear, readable language for the benefit of citizens of this state who are affected by the law." Laws 1988, 194:1(II); RSA 281-A:2 (amended 1999, 2001, 2005, 2007, 2008). Benefits similar to those at question in this case have been commonplace since before the statute's first enactment. It is, therefore, difficult to imagine that the legislature intended such benefits to be included within the "clear, readable language" of RSA 281-A:2, XV, but nonetheless failed to put that intent into words within the original statute or subsequent amendments. *See Morrison-Knudsen*, 461 U.S. at 632; *see also Dalton Hydro*, 153 N.H. at 78 ("We will neither consider what the legislature might have said nor add words that it did not see fit to include.").

The petitioners argue that we should reject *Morrison-Knudsen* and adopt the reasoning of *Cockle*, in which the Washington Court of Appeals held that health insurance payments constituted wages when calculating disability benefits. *Cockle*, 977 P.2d at 672. The statutory definition of wages there was nearly identical to RSA 281-A:2, XV. *See id.* at 670. That court held that the "in kind" compensation falling within the statute included "only those items of in-kind consideration that a worker must replace while disabled." *Id.* at 673. Although that court held that health insurance met this definition, it excluded from wages those benefits that an employee could restore or replenish after returning to work, such as pension benefits and vacation pay. *Id.* at 671. While we do not adopt the ultimate holding of *Cockle*, we believe its reasoning largely undermines the petitioners' arguments. Indeed, under the reasoning of both the Washington Court of Appeals and Washington Supreme Court, the petitioners in this case would not be able to include in their average weekly wage calculation employer contributions to pension, annuity, education, international training or labor management funds. *See Cockle*, 16 P.3d at 594 (supreme court modified definition of wages to include "readily identifiable and reasonably calculable in-kind components of a worker's lost earning capacity at the time of injury that are critical to protecting workers' basic health and survival").

The petitioners also suggest that we look to *Ashby*, 559 A.2d 774, for guidance. That decision interpreted a similar provision and found that "wages" encompassed the entire dollar amount per unit of time worked agreed to in the bargaining agreement. *Id.* at 774. The Maine legislature, however, amended the statute shortly thereafter with the express purpose

of reversing the effects of *Ashby*. *See Hincks v. Robert Mitchell Co.*, 740 A.2d 992, 995 (Me. 1999). We therefore find little, if any, value in using *Ashby* as guidance.

 Because we hold that average weekly wages are to be calculated using a claimant's pre-tax pay, we find the petitioners have failed to prove by a clear preponderance of the evidence that the CAB's decision is clearly unreasonable or unjust. Necessarily, the petitioners' argument for an alternative calculation of average weekly wages including only pension and annuity benefits also fails.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and HICKS, JJ., concurred.