[No. C063646. Third Dist. Aug. 25, 2011.]

BILL MOTHERAL, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, GOLDEN EMPIRE
COUNCIL, BOY SCOUTS OF AMERICA et al., Respondents.

## COUNSEL

M. Hollie Rutkowski for Petitioner.

Suzanne Ah-Tye, Patricia Brown Hein and Alan R. Canfield for Respondents Golden Empire Council, Boy Scouts of America and State Compensation Insurance Fund.

No appearance for Respondent Workers' Compensation Appeals Board.

## OPINION

**BLEASE, J.**—This appeal concerns the calculation of an injured employee's "average weekly earnings" for purposes of determining his temporary disability benefits. (Lab. Code, § 4653.)[1]

Bill Motheral worked as a camp ranger for Golden Empire Council, Boy Scouts of America (the Council). He was paid an annual salary equal to 40 hours per week at the minimum wage. His employment contract specified that his salary "include[d] $5,055 per year for [his] living quarters and utilities (gas, electricity and telephone) at the ranger's residence . . . ." It also provided that he would receive $187.50 a month "for use of [his] vehicle for business . . . ."

Motheral was injured at work in August 2007 and was paid temporary total disability benefits from the date of his injury. The parties disputed whether

---

[1] Further statutory references are to the Labor Code.

section 4454 required that the market value of Motheral's living quarters, utilities, and car allowance be included in computing his average weekly earnings and his resulting disability payment. That section provides in pertinent part: "In determining average weekly earnings . . . , there shall be included . . . the market value of board, lodging, fuel, and other advantages received by the injured employee as part of his remuneration, which can be estimated in money . . . ." (*Ibid.*)

An administrative law judge calculated Motheral's average weekly earnings based solely on his full-time employment (40 hours per week) at the minimum wage, finding it was unnecessary to determine the value of the living quarters and utilities "because it was the parties' intent to pay the applicant at the minimum wage."[2] The Workers' Compensation Appeals Board (Board) denied Motheral's petition for reconsideration.

We issued a writ of review to consider whether Motheral was entitled to have the market value of his living quarters, utilities, and car allowance included in the calculation of his average weekly earnings and resulting disability payment. We shall conclude that section 4454 mandates the inclusion of those sums. Accordingly, we shall annul the Board's decision denying reconsideration and remand for further proceedings to recalculate Motheral's average weekly earnings and resulting disability payment.

## FACTUAL AND PROCEDURAL BACKGROUND

Motheral worked as a camp ranger at Camp Pollock in Sacramento from 2002 until the date of his injury. The terms of his employment were set forth in a written agreement, which states in pertinent part: "Based on a 40 hour per week schedule, your salary will be $14,040 annually ($6.75 per hour)[3] . . . . Your salary includes $5,055 per year for your living quarters and utilities (gas, electricity and telephone) at the ranger's residence at 1501 Northgate Blvd. . . . [¶] It will be necessary for you to provide and maintain an automobile in the performance of your duties, [and] to carry an automobile insurance program which meets the minimum state requirements for liability insurance . . . . [¶] . . . You will receive $187.50 per month for use of your

---

[2] The administrative law judge did not mention the car allowance in his findings or opinion.

[3] At the time the contract was executed in 2002, the minimum wage was $6.75 an hour. (Industrial Welf. Com. wage order No. MW-2001; Cal. Code Regs., tit. 8, § 11000.) Thus $6.75 multiplied by 40 hours equals $270 per week. $270 multiplied by 52 weeks equals $14,040 a year.

vehicle for business, plus an additional allowance of .15 cents per business mile for operating costs."

On August 18, 2007, Motheral injured his right ankle in the course of his employment, which resulted in the amputation of his right leg below the knee.

State Compensation Insurance Fund (State Fund) provided workers' compensation coverage at all relevant times. State Fund paid Motheral temporary disability benefits from August 19, 2007. State Fund calculated Motheral's average weekly earnings based on an annual figure of $15,332.29, which included $12,570.40 in gross wages and $2,761.89 for lodging. State Fund obtained these figures from the Council.

Motheral filed an "Application for Adjudication of Claim" with the Board seeking an order that the market value of his living quarters, utilities, and car allowance be considered in computing his average weekly earnings and resulting temporary disability payment.

The claim was heard by an administrative law judge in June and August 2009. At the hearing, an accounting specialist with the Council acknowledged that Motheral received lodging as part of his employment. The accounting specialist further testified that at the time of his injury, Motheral was paid $6.62 an hour in cash wages. That figure was based on the minimum wage ($7.50 an hour) (§ 1182.12), less Motheral's lodging ($35.27 per week or $0.88 per hour). The accounting specialist obtained the $35.27 per week lodging "credit" from Industrial Welfare Commission (IWC) wage order No. MW-2007,[4] which limited the amount an employer may use as a credit

---

[4] Section 1197 provides that "[t]he minimum wage for employees fixed by the [IWC] is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful." Consistent with that section, the IWC fixed the minimum wage as well as the maximum amounts employers could use to credit employees for meals or lodging to meet part of the employer's minimum wage obligation. (IWC wage order No. MW-2001; Cal. Code Regs., tit. 8, § 11000.) Thereafter, the Legislature enacted section 1182.13, effective January 1, 2007, which, among other things, directed the Department of Industrial Relations to "adjust upwards the permissible meals and lodging credits by the same percentage as the increase in the minimum wage made pursuant to Section 1182.12," which raised the minimum wage to $7.50 per hour beginning January 1, 2007, and $8.00 per hour beginning January 1, 2008. In addition, section 1182.13 directed the Department of Industrial Relations to "amend and republish the [IWC's] wage orders to be consistent with this section and Section 1182.12" and specified that such orders are "exempt from the rulemaking provisions of the Administrative Procedure Act . . . ." (§ 1182.13, subds. (b), (d).) Accordingly, the Department of Industrial Relations amended and republished certain sections of IWC wage order No. MW-2001. The result was IWC wage order No. MW-2007, which, consistent with section 1182.13, subdivision (d), does not appear in the California Code of Regulations.

for lodging to meet part of its minimum wage obligation in 2007 to $35.27 per week for a "[r]oom occupied alone" and two-thirds of the ordinary rental value, and in no event more than $423.51 per month, for an apartment. The accounting specialist used the "[r]oom occupied alone" rate based on his "best judgment" of the facts. The $35.27 did not include utilities.[5]

Motheral testified that he lived in a trailer at the camp until 2005. Thereafter, he moved into an apartment there, which consisted of a front room, small kitchen, a bedroom, and a bathroom. It had electricity, gas, and a telephone. He estimated the "value" of the apartment at $550 a month, including utilities. He based that estimate on what it cost him to live at a trailer park next to the camp prior to moving to the camp in 2002. He estimated that it would cost $600 to $700 to rent a comparable apartment in Sacramento. He based that figure on what he had seen in the newspaper. That figure did not include utilities, which he estimated would cost on average an additional $130 to $140 per month: $50 for gas; $60 to $70 for electricity; and $20 for telephone. He based those figures on the average utility rates he had paid in the past at his trailer and the rates his girlfriend currently paid at her trailer, which was comparable in size to Motheral's apartment at the camp.

An insurance adjuster who spent a couple of hours investigating the cost of renting a one-bedroom, one-bath apartment in Sacramento, testified that rents started at $595, not including gas, electricity or telephone.

Following the hearing, the administrative law judge found Motheral's average weekly earnings were $270 through December 31, 2006, $300 for the period January 1 through December 31, 2007, and $320 for the period January 1, 2008, through the present. He ordered "the parties" to adjust Motheral's benefits in accordance with his findings. He based Motheral's average weekly earnings on Motheral's full-time employment (40 hours per week) at the minimum wage. (§ 1182.12.)[6] He did not include the market

---

[5] This is consistent with IWC wage order No. MW-2007. In setting out the maximum credit for "lodging" that may be used to meet part of an employer's minimum wage obligation, the order sets forth three categories: room occupied alone, room shared, and apartment. With respect to an apartment, the order states in pertinent part: "Apartment—two-thirds (2/3) of the ordinary *rental value* . . . ." (Italics added.) The use of the term "rental value" shows that lodging means rent and does not includes other items such as utilities.

[6] From 2002 through 2006, the minimum wage was $6.75 an hour. (IWC wage order No. MW-2001; Cal. Code Regs., tit. 8, § 11000; *Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314, 324 [37 Cal.Rptr.3d 460].) $6.75 multiplied by 40 hours is $270. In 2007, the minimum wage was $7.50. (§ 1182.12.) $7.50 multiplied by 40 hours is $300 per week. In 2008, the minimum wage was $8.00. (§ 1182.12.) $8.00 multiplied by 40 hours is $320 per week.

value of Motheral's "living quarters," utilities, or car allowance in calculating Motheral's average weekly earnings. He reasoned that "[t]he value of the living quarters and utilities is not necessary to decide because it was the parties' intent to pay the applicant at the minimum wage. There is no evidence to the contrary."

Motheral moved for reconsideration, arguing that under section 4454, he was "entitled to average weekly earnings which include the market value of board, lodging, fuel, and other advantages received . . . as part of his remuneration."

The administrative law judge recommended the petition be denied. He observed that while "including that value [of lodging] is appropriate in most situations, it is not appropriate here because of the employment contract . . . and [Motheral's] admission that the intent of the package was to compensate him at the minimum wage . . . ." The administrative law judge noted that "[h]ad the value of lodging been increased, as [Motheral] now argues should happen retroactively, the compensation formula (cash + lodging) set forth [in the employment contract] would have reduced his cash salary. That is probably not the result [Motheral] would have sought . . . ." The Board adopted and incorporated the administrative law judge's report and recommendation, and denied the petition.

## DISCUSSION

### I.

### Standard of Review

"Our review of the Board's decision upon a petition for writ of review is governed by section 5952. In conducting that review, we may consider whether the Board acted without or in excess of its powers, whether its order, decision, or award was unreasonable or unsupported by substantial evidence, and whether the findings of fact support the order, decision, or award. (§ 5952.) In reviewing questions of fact, we determine whether there is substantial evidence to support the Board's action unless its findings are unreasonable, illogical, improbable or inequitable in light of the overall statutory scheme. In reviewing questions of law, we review the Board's determination de novo. [Citation.]" (*County of San Joaquin v. Workers' Comp. Appeals Bd.* (2007) 147 Cal.App.4th 1459, 1464 [55 Cal.Rptr.3d 152].)

## II.

### Calculation of Average Weekly Earnings

■ Temporary total disability is calculated as "two-thirds of the *average weekly earnings* during the period of such disability . . . ." (§ 4653, italics added.) Pursuant to section 4454, "the market value of board, lodging, fuel, and other advantages received by the injured employee as part of his remuneration, which can be estimated in money," *shall* be included in determining average weekly earnings. Such average weekly earnings, however, "shall not include any sum which the employer pays to or for the injured employee to cover any special expenses entailed on the employee by the nature of his employment . . . ." (*Ibid.*)

" 'Determining whether fuel, lodging, and meals are "remuneration" or "special expenses" requires an analysis of several factors including whether they were provided in exchange for services, whether they are an advantage to the applicant, and whether they are provided to the applicant only while the applicant is performing employment duties.' " (*Burke v. Workers' Comp. Appeals Bd.* (2009) 74 Cal.Comp.Cases 359, 363 (writ den.).) " 'Lodging is remuneration if an employee is provided with lodging in exchange for services and that lodging is an economic advantage to the applicant.' " (*Ibid.*) " '[F]uel is remuneration if the employee is provided with fuel in exchange for services. Fuel and other traveling expenses have been found to be remuneration where the employer doesn't reimburse the employee for traveling expenses, but rather pays the employee a fixed amount, whether or not the employee actually travels.' " (*Id.* at p. 364.)

■ Applying those standards here, there is no question that the lodging, utilities, and car allowance Motheral received were remuneration, and therefore, should have been considered in calculating his average weekly earnings and resulting temporary disability payment. As detailed in his employment contract, Motheral received lodging and utilities in exchange for his services. While the contract contemplated that at least a portion of the value of his lodging and utilities would be deducted from his wages, the amount of such deduction was limited. (IWC wage order No. MW-2001; Cal. Code Regs., tit. 8, § 11000.)

■ IWC wage order No. MW-2001 provides in pertinent part: "Meals or lodging may not be credited against the minimum wage without a voluntary written agreement between the employer and the employee." (Cal. Code Regs., tit. 8, § 11000.) "When credit for meals or lodging is used to meet part of the employer's minimum wage obligation," IWC wage order No. MW-2001 limits the amounts of such a credit. (*Ibid.*) As of January 1,

2007, those limits were as follows: $35.27 a week for a room occupied alone and two-thirds of the ordinary rental value of an apartment, and in no event more than $423.51 per month. (§ 1182.13; IWC wage order No. MW-2007.)

 According to the Council's accounting specialist, the Council adhered to those limits when "crediting" Motheral's lodging against his cash wages prior to his injury. In 2007, the Council paid Motheral $6.62 an hour—the minimum wage of $7.50 less $0.88 an hour. The $0.88 an hour represented the maximum amount that could be "credited" to an employee's wages for a room occupied alone: $35.27 per week, divided by 40 hours. If the fair market value of the lodging and utilities received exceeded the amounts deducted from Motheral's actual wages, the excess amount constituted an "advantage" and should have been included in the calculation of his average weekly earnings. (*Burke, supra,* 74 Cal.Comp.Cases at p. 363; see also *Montgomery v. Workers' Comp. Appeals Bd.* (2003) 68 Cal.Comp.Cases 965, 967–968.)

As for the car allowance, it was to be paid regardless of how much or even whether Motheral drove, and therefore, constituted remuneration. (*Burke, supra,* 74 Cal.Comp.Cases at p. 364.) Accordingly, it, too, should have been included in the calculation of Motheral's average weekly earnings. (*Ibid.*; § 1182.13; IWC wage order No. MW-2007.)

On remand, the Board is directed to recalculate Motheral's average weekly earnings using his minimum wage salary, less the applicable lodging credit, plus the market value of his living quarters, utilities (gas, electric, and local telephone service), and one quarter of his monthly car allowance.[7]

---

[7] With respect to the administrative law judge's finding, adopted by the Board, that "increasing the value of lodging . . . is not appropriate here because of the employment contract . . . and [Motheral's] admission that the intent of the package was to compensate him at the minimum wage," we observe that any agreement that would reduce Motheral's cash wages beyond a certain amount would have been at odds with applicable minimum wage laws. When Motheral began his employment in 2002, the maximum amount an employer could credit an employee for lodging to meet its minimum wage obligations was $31.75 a week for a "[r]oom occupied alone." (IWC wage order No. MW-2001; Cal. Code Regs., tit. 8, § 11000.) The employment contract, however, provided that Motheral's salary, which was based on the minimum wage, included "$5,055 per year for [his] living quarters and utilities (gas, electricity and telephone) at the ranger's residence . . . ." $5,055 per year equates to $97.21 per week, which was over three times the maximum amount allowed under the law. The Council apparently recognized this problem because in 2007 it "credited" Motheral $35.27 per week (the maximum amount allowed for a room occupied alone at that time (IWC wage order No. MW-2007)), and *not* $97.21. To the extent the fair market value of the lodging Motheral received exceeded the applicable lodging credit, that amount constituted an economic advantage which Motheral was entitled to have included in calculating his average weekly earnings and resulting disability benefit. (§ 4454; see also *Burke, supra,* 74 Cal.Comp.Cases at p. 363.)

## DISPOSITION

The Board's order denying Motheral's petition for reconsideration is annulled. The matter is remanded for further proceedings consistent with the views expressed herein. Motheral shall recover his costs on appeal. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

Raye, P. J., and Butz, J., concurred.

---

Whether Motheral's lodging at the time of his injury constituted a "room occupied alone" or an apartment is for the Board's determination.