IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ANTHONY J. YUCHASZ, | ) | No. 70724-8-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF LABOR & | ) | PUBLISHED OPINION |
| INDUSTRIES OF THE STATE OF | ) | |
| WASHINGTON, | ) | |
| | ) | |
| Respondent. | ) | FILED: October 6, 2014 |

SCHINDLER, J. — Under the Washington Industrial Insurance Act, Title 51 RCW, the calculation of time loss and loss of earning power benefits must include the reasonable value of board, housing, fuel, or other consideration of like nature that is critical to the worker's basic health or survival. Anthony J. Yuchasz claims the Washington State Department of Labor and Industries erred in excluding the reasonable value of the gasoline his employer paid at the time of his injury to use the company van from the calculation of loss of earning power. Because the reasonable value of gasoline for the company-provided vehicle is a fringe benefit that is not critical to the worker's health or survival, we affirm.

FACTS

Anthony J. Yuchasz worked as an electrician for Computer Power and Service Inc. Computer Power provided Yuchasz with a company van to carry tools and travel between jobsites. Computer Power paid for the cost of gasoline for the van. Computer Power did not allow Yuchasz to use the van for his personal use. Yuchasz kept the van at his home at night, and in the morning, drove the van to the first jobsite.

On February 22, 2011, Yuchasz injured his right rotator cuff at work while "lifting cables overhead into a bin on the back of a truck." The Washington State Department of Labor and Industries (Department) calculated Yuchasz's wages at the time of the injury based on an eight-hour-a-day gross hourly rate plus health care benefits. From March 1, 2011 to August 15, 2011, Yuchasz received time-loss compensation benefits in the amount of $6,531.76 per month.

After returning to work, a worker is entitled to loss of earning power benefits if his work injury has caused his earning power to diminish by at least 5 percent compared to his earning power at the time of the injury. RCW 51.32.090(3)(b). On August 16, Yuchasz returned to Computer Power in a light-duty position. Because the company van had been re-assigned to another full-time, regular duty employee, Yuchasz drove his personal vehicle to and from work. Computer Power reimbursed Yuchasz for the use of his vehicle, including the cost of gasoline, to travel between jobsites. Computer Power did not reimburse Yuchasz for the cost of gasoline to drive to and from his home. Yuchasz received loss of earning power benefits from the date he returned to work in a light-duty position until April 3, 2012.

2

On October 10, 2011, Yuchasz filed a request to include "the full expense of driving his personal vehicle" as a part of the calculation of loss of earning power. Specifically, Yuchasz asserted the calculation of loss of earning power benefits should include the cost of gasoline to drive to and from his home. The Department denied Yuchasz's request. On December 13, Yuchasz appealed the Department's decision to the State of Washington Board of Industrial Insurance Appeals (BIIA).

Yuchasz filed a motion for summary judgment, arguing the value of gasoline Computer Power paid for use of the company van at the time of his injury should have been included in the wage calculation of loss of earning power under RCW 51.08.178(1). In support, Yuchasz submitted a declaration stating that at the time of his injury on February 22, 2011, he was "provided with the use of a company car. My employer supplied the fuel for the car." Yuchasz states that after he returned to work on August 16, 2011 in a "light duty position," the benefits he received "did not include the cost of fuel that had been previously supplied by my employer at the time of my injury."

Computer Power did not dispute that Yuchasz previously used a company van and it paid for gasoline. The declaration of Computer Power Vice President Kelly Dwyer states, in pertinent part:

4. Up through the date of the industrial injury, Anthony Yuchasz used a company vehicle to perform his regular job duties.
5. This company vehicle contained the tools that Mr. Yuchasz needed to perform his job duties for CPSI [(Computer Power and Service Inc.)].
6. At night, Mr. Yuchasz kept this vehicle at his home.
7. Mr. Yuchasz traveled from his home to the first job site of the day, and from the last job site of the day to his home, as well as to job sites in between, in this company vehicle.
8. The fuel for the vehicle was paid for by CPSI.
. . . .
11. The company vehicle is not to be used for personal use.

3

Dwyer also states that "[t]he company vehicle is merely a company tool that our employees can use in the course of business to benefit" Computer Power and "use of this company vehicle is not considered compensation."

The industrial appeals judge (IAJ) issued a proposed decision and order. The IAJ concluded that "[u]nder RCW 51.08.178(1), Mr. Yuchasz's wages included the reasonable value of fuel for him to travel to and from his home for his work for Computer Power & Services." The IAJ reversed the decision of the Department denying the request to include the cost of gasoline for driving to and from work in calculating loss of earning power.

The BIIA reversed the IAJ and issued a "Tentative Significant Decision"[1] affirming the Department. The order sets forth the following undisputed findings:

1. On April 4, 2012, an industrial appeals judge certified that the parties agreed to include the Jurisdictional History in the [BIIA] record solely for jurisdictional purposes.

2. Anthony J. Yuchasz sustained an industrial injury during the course of his employment with Computer Power & Service, Inc., on February 22, 2011.

3. At the time of Mr. Yuchasz's injury, the employer provided him with a company vehicle and paid for the fuel. Mr. Yuchasz kept the vehicle at his home at night, and in the morning, he drove it to the first jobsite of the day. During the day, he drove the vehicle between jobsites, and at night, he drove it home from the last jobsite of the day.

4. After the injury, Mr. Yuchasz returned to work at light duty with Computer Power & Service, Inc. The employer no longer provided him with a vehicle but reimbursed him for the use of his personal vehicle to travel between jobsites. He was not reimbursed for travel between his home and his work.

---

[1] A "significant decision" is a decision the BIIA "considers to have an analysis or decision of substantial importance to the [BIIA] in carrying out its duties." WAC 263-12-195(1).

5.   Mr. Yuchasz received loss of earning power benefits from August 15, 2011, to April 3, 2012.  The calculation of these benefits did not include the reasonable value of fuel that had previously been supplied by his employer at the time of injury for travel between his home and work.

Relying on the Washington State Supreme Court decision in Cockle v. Department of Labor & Industries, 142 Wn.2d 801, 16 P.3d 583 (2001), the BIIA concluded that "unlike home utility fuel, transportation fuel used to commute to and from work is not a core, non-fringe benefit critical to protecting the basic health and survival of workers."  Accordingly, the BIIA determined that "[t]he reasonable value of transportation fuel provided by the employer at the time of injury for going to and from work cannot be included in wages under RCW 51.08.178(1)."

The BIIA decision also cites In re Brammer, No. 06 10641, 2007 WL 1413101 (Wash. Bd. of Indus. Ins. Appeals Feb. 7, 2007).  In Brammer, the BIIA relied on Cockle to conclude that under RCW 51.08.178(1), the value of an employer-provided vehicle for personal use was not "consideration of like nature" to food, shelter, and fuel. Brammer, 2007 WL 1413101, at *5.

Yuchasz appealed the BIIA decision.  Yuchasz and the Department filed cross motions for summary judgment.  The superior court granted the Department's motion for summary judgment.  The court ruled that "[t]he cost of transportation fuel provided to Mr. Yuchasz by his employer at the time of injury for travel between his home and work cannot be included as 'wages' under RCW 51.08.178(1)."  Yuchasz appeals.

ANALYSIS

Yuchasz asserts the court erred in ruling the value of employer-provided gasoline he received at the time of his injury to drive the company van to and from work cannot be included in the calculation of wages under RCW 51.08.178(1).

In an appeal from a BIIA decision, the superior court acts in an appellate capacity, reviewing the decision de novo. Ruse v. Dep't of Labor & Indus., 138 Wn.2d 1, 5, 977 P.2d 570 (1999).[2] RCW 51.52.140 governs our review of the superior court decision. RCW 51.52.140 states that an "[a]ppeal shall lie from the judgment of the superior court as in other civil cases."

We treat the undisputed facts as verities on appeal and review summary judgment de novo. Roller v. Dep't of Labor & Indus., 128 Wn. App. 922, 927, 117 P.3d 385 (2005); Malang v. Dep't of Labor & Indus., 139 Wn. App. 677, 683-84, 162 P.3d 450 (2007) (citing CR 56(c)). Statutory construction is also a question of law we review de novo. Cockle, 142 Wn.2d at 807.

Yuchasz claims that under RCW 51.08.178(1), the value of employer-provided gasoline that he received at the time of his injury must be included as wages for purposes of calculating loss of earning power benefits.

When an injured worker is temporarily disabled, "wage replacement benefits may be available under RCW 51.32.090." Hubbard v. Dep't of Labor & Indus., 140 Wn.2d

---

[2] RCW 51.52.115 states, in pertinent part:

The hearing in the superior court shall be de novo, but the court shall not receive evidence or testimony other than, or in addition to, that offered before the [BIIA] or included in the record filed by the [BIIA] in the superior court as provided in RCW 51.52.110 . . . . In all court proceedings under or pursuant to this title the findings and decision of the [BIIA] shall be prima facie correct and the burden of proof shall be upon the party attacking the same. If the court shall determine that the [BIIA] has acted within its power and has correctly construed the law and found the facts, the decision of the [BIIA] shall be confirmed.

35, 37 n.1, 992 P.2d 1002 (2000). Where, as here, the worker is able to return to work but the worker's former earning power is only "partially restored," the worker is entitled to "loss of earning power" benefits. RCW 51.32.090(3); Hubbard, 140 Wn.2d at 37 n.1. The purpose of loss of earning power benefits "is to reflect a worker's lost earning capacity." Double D Hop Ranch v. Sanchez, 133 Wn.2d 793, 798, 947 P.2d 727 (1997).

Under the Washington Industrial Insurance Act (IIA), Title 51 RCW, the worker's actual wages at the time of injury determine loss of earning power benefits. RCW 51.08.178; Cockle, 142 Wn.2d at 806; see also RCW 51.32.090(1), (3); RCW 51.32.060(1).

RCW 51.08.178(1) sets forth how "wages" are calculated. RCW 51.08.178(1) states, in pertinent part:

> For the purposes of this title, the monthly wages the worker was receiving from all employment at the time of injury shall be the basis upon which compensation is computed unless otherwise provided specifically in the statute concerned. In cases where the worker's wages are not fixed by the month, they shall be determined by multiplying the daily wage the worker was receiving at the time of the injury:
>
> . . . .
> The term "wages" shall include the reasonable value of board, housing, fuel, or other consideration of like nature received from the employer as part of the contract of hire, but shall not include overtime pay except in cases under subsection (2) of this section.[3]

Yuchasz argues the plain and unambiguous meaning of the term "fuel" includes the value of gasoline or vehicle fuel.[4]

---

[3] Emphasis added.

[4] Relying on a section of the 1911 IIA, Yuchasz also claims the legislative history of RCW 51.08.178 suggests the legislature "likely" intended "fuel" to include vehicle fuel. But the IIA did not define "wages" in 1911. In 1971, the legislature defined "wages" to include "the reasonable value of board, housing, fuel, or other consideration of like nature received from the employer." LAWS OF 1971, 1st Ex. Sess., ch. 289, § 14; Cockle, 142 Wn.2d at 810.

" 'It is a fundamental rule of statutory construction that once a statute has been construed by the highest court of the state, that construction operates as if it were originally written into it.' " Hale v. Wellpinit Sch. Dist. No. 49, 165 Wn.2d 494, 506, 198 P.3d 1021 (2009) (quoting Johnson v. Morris, 87 Wn.2d 922, 927, 557 P.2d 1299 (1976)). Where the Supreme Court determines what a particular statute means, that determination relates back to the time of the statute's enactment. Hale, 165 Wn.2d at 506.

In Cockle, the Washington State Supreme Court interpreted the meaning of the statutory language "board, housing, fuel, or other consideration of like nature" to determine whether the value of employer-provided health care coverage should be used to calculate compensation payments under RCW 51.08.178(1).

Relying on the ejusdem generis rule of statutory construction, the Supreme Court held that the phrase " 'board, housing, fuel, or other consideration of like nature' " means "readily identifiable and reasonably calculable in-kind components of a worker's lost earning capacity at the time of injury that are critical to protecting workers' basic health and survival." Cockle, 142 Wn.2d at 822 (quoting RCW 51.08.178(1)).

The court described the difference between core nonfringe benefits and fringe benefits that are "not critical to protecting" a worker's "basic health and survival":

> Core, nonfringe benefits such as food, shelter, fuel, and health care all share that "like nature." By contrast, we do not believe injury-caused deprivation of the reasonable value of fringe benefits that are not critical to protecting workers' basic health and survival qualifies as the kind of "suffering" that Title 51 was legislatively designed to remedy. See RCW 51.12.010.

Cockle, 142 Wn.2d at 822-23.[5]

---

[5] Emphasis in original.

The court states this is not a "subjective determination" and in determining whether "[h]ealth care coverage is 'of like nature' to 'board, housing [and] fuel,' " the court must decide whether the benefit "is objectively critical to protecting the basic health and survival of virtually all workers." Cockle, 142 Wn.2d at 822-23 n.13[6] (quoting RCW 51.08.178(1)). The court concluded that because health care premiums paid by the injured worker's employer are critical to protecting a worker's basic health and survival, the reasonable value of the health care coverage should have been included in the calculation of worker's compensation benefits. Cockle, 142 Wn.2d at 823.

Yuchasz asserts that because the term "fuel" as used in RCW 51.08.178(1) includes gasoline, the value of the gasoline the employer paid for use of the company vehicle is not subject to "the basic health and survival test" in Cockle. Yuchasz also contends the language in Cockle stating "fuel" means "heat" is dicta. See Cockle, 142 Wn.2d at 821. We disagree.

Under the rule of ejusdem generis, general terms appearing in a statute in connection with specific terms are given meaning and effect only to the extent that the general terms suggest similar items to those designated by the specific terms. Silverstreak, Inc. v. Dep't of Labor & Indus., 159 Wn.2d 868, 882, 154 P.3d 891 (2007). Accordingly, the Supreme Court in Cockle interpreted the specific terms "board, housing, [and] fuel" in order to determine the meaning of the general term "other consideration of like nature." RCW 51.08.178(1). The court concluded the common shared attribute of the specific terms " 'board, housing, [and] fuel' " is that the terms are all "readily identifiable and reasonably calculable in-kind components of a worker's lost

---

[6] Alteration in original.

earing capacity at the time of injury that are critical to protecting workers' basic health and survival." Cockle, 142 Wn.2d at 822 (quoting RCW 51.08.178(1)).

The Supreme Court also concluded the Court of Appeals properly rejected the argument that " 'any and all forms of consideration' " paid by the employer should be included in the calculation of wages under RCW 51.08.178(1). Cockle, 142 Wn.2d at 821 (quoting Rose v. Dep't of Labor & Indus., 57 Wn. App. 751, 758, 790 P.2d 201 (1990)). The Supreme Court agreed that "fuel" means heating fuel because heat is critical to protecting a worker's basic health and survival, and cited with approval the determination of the Court of Appeals that " '[i]t is not hard to discern why the legislature provided that [food, shelter, and heat] shall count as 'wages.' . . . Each is a necessity of life, without which the injured worker cannot survive a period of even temporary disability.' " Cockle, 142 Wn.2d at 821[7] (quoting Cockle v. Dep't of Labor & Indus., 96 Wn. App. 69, 74, 977 P.2d 668 (1999)).

In Gallo v. Department of Labor & Industries, 155 Wn.2d 470, 120 P.3d 564 (2005), the Supreme Court reiterated that in order to qualify as a benefit "critical to the 'basic health and survival' of the injured worker at the time of injury," the benefit must be funded by the employer at the time of the injury, immediately available to the injured worker, and necessary to maintain the worker's health or ensure his survival during even temporary periods of disability. Gallo, 155 Wn.2d at 491-92. Applying the Cockle test, the court concluded that employer contributions to retirement, life insurance, disability, and apprenticeship training trust funds are "not consideration of like nature to board, housing, fuel and health benefits" because they "are not critical to the basic health and survival of the injured worker at the time of injury." Gallo, 155 Wn.2d at 493;

---

[7] Some alteration in original, footnote omitted.

see also Erakovic v. Dep't of Labor & Indus., 132 Wn. App. 762, 772-75, 134 P.3d 234 (2006) (Social Security, Medicare, and Industrial Insurance benefits are not "in-kind consideration" because the benefits are not "so critical to workers' health or survival that workers would be required to replace them during even temporary periods of disability").

Yuchasz also relies on an out-of-state case, Motheral v. Workers' Compensation Appeals Board, 199 Cal. App. 4th 148, 130 Cal. Rptr. 3d 677 (2011), to argue other states have interpreted the term "fuel" for purposes of a wage benefit to mean vehicle fuel. But as the court states in Cockle, because our worker's compensation statutes differ from those in other states, " '[t]o seek authority in the decisions of other states is useless.' " Cockle, 142 Wn.2d at 815[8] (quoting Stertz v. Indus. Ins. Comm'n of Wash., 91 Wash. 588, 604, 158 P. 256 (1916)).[9]

We hold that under Cockle, the reasonable value of the employer-provided gasoline for use in the company van is a fringe benefit that is not critical to the basic health and survival of the worker at the time of injury. We reject the argument that excluding the reasonable value of employer-provided gasoline for use in the company van is contrary to the intent of the IIA to reduce the suffering and economic loss "arising from injuries and/or death occurring in the course of employment." RCW 51.12.010. As the Supreme Court concluded In Cockle, "we do not believe injury-caused deprivation of the reasonable value of fringe benefits that are not critical to protecting workers' basic

---

[8] Alteration in original.

[9] In any event, Motheral is distinguishable. In Motheral, as part of an employment contract, the employer agreed to pay the worker a certain amount each month " 'for use of [his] vehicle for business.' " Motheral, 199 Cal. App. 4th at 150 (alteration in original). Because the vehicle allowance "was to be paid regardless of how much or even whether [the worker] drove," the California court concluded the allowance "constituted remuneration" and should have been included in calculating weekly earnings. Motheral, 199 Cal. App. 4th at 156.

11

health and survival qualifies as the kind of 'suffering' that Title 51 was legislatively designed to remedy." Cockle, 142 Wn.2d at 823[10] (citing RCW 51.12.010).

We affirm summary judgment and the decision of the BIIA.

WE CONCUR:

---

[10] Emphasis in original.