**FILED**
**MARCH 17, 2020**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CHARLES K. ANDERSON, | ) | |
| | ) | No. 36297-3-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF LABOR and | ) | UNPUBLISHED OPINION |
| INDUSTRIES, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, J. — Charles Anderson appeals a superior court decision affirming the

Department of Labor and Industries' (Department) calculation of the wage he was

receiving at the time he suffered an occupational injury. He contends that the value of a

truck and truck-related expenses that his employer provided for his business and personal

use should have been counted in arriving at his wages. Applying the Washington

Supreme Court's controlling construction of the definition of wages, we reject his

challenge and affirm.

FACTS AND PROCEDURAL BACKGROUND

In August 2015, the Department issued an order affirming its calculation that at

the time he suffered an occupational injury, Charles Anderson was receiving gross

monthly "wages," as that term is defined by RCW 51.08.178(1), of $6,618.68. The

$6,618.68 in wages consisted of his $5,582.94 monthly salary, health care benefits in the amount of $785.74, and a bonus of $250.00 per month. Mr. Anderson, then a 29-year employee and transfer station manager for Columbia Basin, LLC (Columbia), appealed the order, contending that the value of an employer-provided vehicle, insurance, maintenance and fuel that Columbia had provided him for almost 20 years should be included in the wage calculation.

At the hearing of Mr. Anderson's appeal, he presented evidence that around 1997, Columbia provided him with a 1997 Ford F-250 diesel pickup for his business and personal use. This was a second car for the Anderson household; Mr. Anderson testified that he owned a personal vehicle but after Columbia provided him with a truck, the use of the Andersons' vehicle was limited to rare occasions (once every couple of years) when the company-provided truck was being repaired. Mr. Anderson fueled his employer-provided truck at fueling stations located at his job site. Maintenance was provided at the employer's shop and was billed internally. Insurance coverage was paid by Columbia. The only restriction on use of the truck imposed by Columbia was that Mr. Anderson not have anyone in the truck with him except his wife. Mr. Anderson did not keep records of his mileage, but he estimated he traveled 600 miles a month commuting to work and on other work-related trips, and typically traveled 400 miles a month on personal trips. In 2010, Columbia replaced Mr. Anderson's Ford pickup with a 2010 Chevrolet Duramax diesel pickup.

Eugene Hill, Columbia's chief financial officer, was called as a witness by the Department, evidently for the purpose of establishing that Columbia had not provided Mr. Anderson with cash with which to cover truck expenses; expenses were paid directly by the company. Mr. Hill affirmed that as Mr. Anderson advanced in the company, his compensation package came to include Columbia's provision to him of a fully expensed vehicle that was available for his personal as well as business use.

The Department's position was and remains that gas reimbursement and valuation for an employer-provided vehicle are not included in "wages" as defined by RCW 51.08.178(1). On that basis, it moved to dismiss Mr. Anderson's appeal. After the receipt of posthearing briefing by the parties, the industrial appeals judge (IAJ) entered a proposed decision and order granting the Department's motion to dismiss for failure to present a prima facie case.

Mr. Anderson petitioned the Board of Industrial Insurance Appeals (Board) for review. The Board denied review and the IAJ's proposed decision and order became the decision and order of the Board.

Mr. Anderson appealed to the Benton County Superior Court. At the conclusion of a hearing on the appeal, the trial court expressed reservations about the construction of RCW 51.08.178(1) by this court and the Washington Supreme Court. Noting that it was bound by those decisions, however, it affirmed the Board. Mr. Anderson appeals.

3

No. 36297-3-III
*Anderson v. Dep't of Labor and Indus.*


ANALYSIS

Standard of Review

In industrial insurance cases, the superior court conducts a de novo review of the Board's decision, relying exclusively on the Board record. RCW 51.52.115; *Gallo v. Dep't of Labor & Indus.*, 119 Wn. App. 49, 53, 81 P.3d 869 (2003), *aff'd*, 155 Wn.2d 470, 120 P.3d 564 (2005). The Board's findings and decision are prima facie correct and the party challenging the Board's decision has the burden of proof. *Id*. at 53-54. On appeal to this court, we review the superior court's decision under the ordinary standard of review for civil cases, determining whether substantial evidence supports the trial court's factual findings and then, de novo, whether the trial court's conclusions of law flow from the findings. RCW 51.52.140; *Ruse v. Dep't of Labor & Indus*., 138 Wn.2d 1, 5, 977 P.2d 570 (1999). Here, the only issue presented is one of statutory construction, which we review de novo. *Berrocal v. Fernandez*, 155 Wn.2d 585, 590, 121 P.3d 82 (2005).

*"Board, housing, fuel, or other consideration of like nature"*

At issue is abstruse language in RCW 51.08.178(1) and the construction of that language by our Supreme Court in *Cockle v. Department of Labor & Industries*, 142 Wn.2d 801, 16 P.3d 583 (2001). RCW 51.08.178 governs the Department's calculation of a worker's compensation payment. RCW 51.08.178(1) provides that generally, the monthly wages a worker was receiving from all employment at the time of an

4

occupational injury shall be the basis upon which worker's compensation is computed.

Relevant to the issue on appeal, the statute states:

> The term "wages" shall include the reasonable value of *board, housing, fuel, or other consideration of like nature* received from the employer as part of the contract of hire, but shall not include overtime except in cases under subsection (2) of this section.

RCW 51.08.178(1) (emphasis added).

In *Cockle*, a worker challenged the Department's refusal to include her employer-provided medical and dental insurance in computing her monthly wages for time-loss compensation purposes. The term "wages" was added to Title 51 RCW's definitional section in 1971, when compensation in many cases was changed from fixed rates to an amount proportionate to a worker's actual wages at the time of injury. *Cockle*, 142 Wn.2d at 810; LAWS OF 1971, 1st Ex. Sess., ch. 289, § 14. By 2001, when the Supreme Court decided *Cockle*, the Department had long excluded health care coverage from its computation of "wages," and it stressed the fact that the legislature had not responded by altering the statutory definition. But the Supreme Court declined to defer to the Department's construction, which it characterized as "giv[ing] little, if any, meaning to the statutory requirement that the 'reasonable value' of all 'other consideration of like nature' be included in the calculation of an injured worker's 'wages.'" 142 Wn.2d at 812. It also viewed the Department's construction as irreconcilable with the legislature's statutory mandate that Title 51 RCW provisions be liberally construed for the purpose of

reducing to a minimum the suffering and economic loss arising from injuries or death occurring in the course of employment. *Id.* (citing RCW 51.12.010).

Noting that Ms. Cockle and the Department had proposed "several reasonable interpretations of the phrase 'other consideration of like nature,'" the Supreme Court found the phrase ambiguous and resorted to principles of statutory construction. *Id.* at 808. Because the legislature had limited the in-kind component of earnings that would be counted as "wages" to the three examples and "other consideration *of like nature*," the Court found that a limited, ejusdem generis, construction was intended. *Id.* at 810.

In a lengthy analysis, the Court considered other provisions of Title 51 RCW, workers' compensation decisions from other jurisdictions, and the Department's and dissenting justices' arguments against construing health care coverage as "consideration of like nature." It observed that in this court's decision in Ms. Cockle's case, it held that "board"—meaning food, "housing"—meaning shelter, and "fuel"—meaning heat or warmth, are each necessities of life, without which an injured worker cannot survive a period of even temporary disability. 142 Wn.2d at 821 (citing *Cockle v. Dep't of Labor & Indus.*, 96 Wn. App. 69, 74, 977 P.2d 668 (1999)). "Modify[ing] that analysis only slightly," the Supreme Court described the attribute shared by "board," "housing," and "fuel" that determined the boundaries of the larger category of "other consideration of like nature" as follows:

> We therefore construe the statutory phrase "board, housing, fuel, or other consideration of like nature" in RCW 51.08.178(1) to mean *readily identifiable and reasonably calculable in-kind components* of a worker's lost earning capacity at the time of injury that are *critical to protecting workers' basic health and survival.* Core, nonfringe benefits such as food, shelter, fuel, and health care all share that "like nature." By contrast, we do not believe injury-caused deprivation of the reasonable value of fringe benefits that are not critical to protecting workers' basic health and survival qualifies as the kind of "suffering" that Title 51 RCW was legislatively designed to remedy.

*Id.* at 822-23 (emphasis added and omitted) (footnote omitted).

In a footnote to this holding that responded to dissenting Justice Talmadge's argument that different benefits would be "core" to differently-situated workers, the Court said, "This is not a subjective determination." *Id.* n.13. Justice Talmadge had said:

> How can this court, divorced from the reality of modern workplace compensation and the give and take of labor-management negotiations, determine what would be "core" to the well-being of a particular injured worker? Certainly, for an older injured worker approaching retirement age, deferred compensation plans and pension benefits might well constitute a "core benefit." For a younger employee, vacation benefits, as Ms. Cockle originally argued, or tuition assistance programs for children in higher education, might equally be a core benefit.

*Id.* at 831 (Talmadge, J., dissenting). The Court answered that "Health care coverage is 'of like nature' to 'board, housing [and] fuel' because, like those employment benefits, it is *objectively critical* to protecting the basic health and survival of *virtually all workers*." *Id.* at 822-23 n.13 (emphasis added) (alteration in original). In the context of the majority's disagreement with Justice Talmadge, this subjective/objective distinction ruled out not only a worker's *individual belief* about his or her needs as a basis for deciding

7

what is "core," but also ruled out a worker's *individual circumstances* as creating a "core" benefit. On a related note, the Court stated elsewhere that the "proper application" of its ejusdem generis construction would substantially address the Department's warning of a "potential 'flood of litigation' over which modern work benefits should and should not be included in 'wages' in RCW 51.08.178." *Id.* at 821.

In 2007, the legislature codified the inclusion of health care benefits in the definition of "wages" in RCW 51.08.178, without otherwise modifying the limitation of in-kind components of earnings to "the reasonable value of board, housing, fuel, or other consideration of like nature."[1]

Also in 2007, the Board—relying on the Supreme Court's decision in *Cockle*—interpreted RCW 51.08.178's reference to "fuel" to refer to home utility expenses, not transportation costs. *In re Brammer*, No. 06 10641, 2007 WL 1413101 at *4 (Wash. Bd. of Indus. Ins. Appeals Feb. 7, 2007). In *In re Yuchasz*, No. 12 10803, 2013 WL 2476945 at *1 (Wash. Bd. of Indus. Ins. Appeals Feb. 28, 2013), it reaffirmed that interpretation,

---

[1] Language added to the provision states:

As consideration of like nature to board, housing, and fuel, wages shall also include the employer's payment or contributions, or appropriate portions thereof, for health care benefits unless the employer continues ongoing and current payment or contributions for these benefits at the same level as provided at the time of injury.

LAWS OF 2007, ch. 297, § 1.

holding that the reasonable value of transportation fuel provided by an employer for business use could not be included in wages under RCW 51.08.178(1).

The Board's decision in *Yuchasz* was appealed to superior court and then to this court. *See Yuchasz v. Dep't of Labor & Indus.*, 183 Wn. App. 879, 335 P.3d 998 (2014). This court agreed with the Board that in *Cockle*, the Supreme Court held that "fuel" means heating fuel because heat is critical to protecting a worker's basic health and survival. *Id.* at 890. This court also recognized the "'fundamental rule of statutory construction that once a statute has been construed by the highest court of the state, that construction operates as if it were originally written into it.'" *Id.* at 888 (quoting *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 506, 198 P.3d 1021 (2009).

Mr. Anderson argues that because our Supreme Court has consistently held that the purpose of time-loss compensation is to properly reflect a worker's actual lost earning capacity, RCW 51.08.178(1) must be interpreted in a way that reflects his real lost earning capacity. Br. of Appellant at 3. But in *Gallo*, the Supreme Court—holding that employer contributions to various trust funds benefitting employees would not count toward "wages"—reaffirmed that while an injured worker should be compensated based on actual lost earning capacity, that does not mean that all forms of consideration are to be included in calculating "wages." 155 Wn.2d at 488. It reiterated that "a benefit is 'other consideration' if a worker cannot survive without it, even during a period of temporary disability." *Id.* at 491.

9

Mr. Anderson also argues that in his case, the employer-provided truck expense was necessary to survival because Columbia provided a truck for his personal as well as business use, and "it is a fact of life in modern times that a reliable vehicle in good working order *has* absolutely become a basic health and survival necessity for working families residing and/or working in rural areas." Br. of Appellant at 12. Because he claims to reside in an area with inadequate mass transportation, Mr. Anderson argues that "[u]nder the very specific facts of [his] case," the trial court failed to recognize that he presented substantial evidence of the core nature of the benefit. *Id.* Of course, under the very specific facts of Mr. Anderson's case, his employer-provided truck was a *second* family car, not the only family car.

Even if the truck provided by Columbia were the only family car, Mr. Anderson demonstrates only that his employer-provided truck was a *means* for securing necessities such as food and medical care, not that the truck itself was critical to his health and survival. And where Mr. Anderson recognizes that having a vehicle is not a core benefit for a worker who lives in an area with adequate mass transportation, his argument asks us to find a health and survival need based on the individual circumstances of persons living in areas like Benton County—a subjective need analysis that the Court rejected in *Cockle*. Under *Cockle*'s controlling construction, Mr. Anderson's employer-provided truck was not consideration "of like nature" to board, housing, or heating fuel.

10

No. 36297-3-III
*Anderson v. Dep't of Labor and Indus.*

Affirmed.[2]

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

I CONCUR:

_____
Korsmo, J.

---

[2] The Department suggests we can affirm the superior court on the alternative
ground that Mr. Anderson failed to present evidence of a monetary value of the truck and
its costs in proceedings before the IAJ. When the Department moved to dismiss Mr.
Anderson's appeal, it did so solely on the basis of *Yuchasz* and the fact that an employer-
provided vehicle is not critical to a worker's basic health and survival. *See* Clerk's
Papers at 73-74. We will not consider an argument that was not raised and addressed in
proceedings before the IAJ and the Board. *See* RAP 2.5(a).

11

No. 36297-3-III

FEARING, J. (dissenting) — This appeal poses the question of whether an injured person's worker compensation benefit rates should reflect the personal transportation costs reimbursed by his employer as part of his remuneration. I would rule in favor of the worker. I thus dissent from this court's majority and also disagree with Division One's opinion in *Yuchasz v. Department of Labor & Industries*, 183 Wn. App. 879, 335 P.3d 998 (2014).

Worker compensation is remedial in nature and its calculation should reflect a worker's actual lost earning capacity. *Cockle v. Department of Labor & Industries*, 142 Wn.2d 801, 822, 16 P.3d 583 (2001). The worker compensation system determines an injured worker's time-loss and loss of earning power compensation rates by reference to a worker's "wages," as that term is defined in RCW 51.08.178, at the time of the injury. *Cockle v. Department of Labor & Industries*, 142 Wn.2d at 806.

The relevant portion of RCW 51.08.178 reads:

> (1) For the purposes of this title, the monthly wages the worker was receiving from all employment at the time of injury shall be the basis upon which compensation is computed unless otherwise provided specifically in the statute concerned. . . .
> . . . .
> The term "wages" shall include the reasonable value of *board, housing, fuel, or other consideration of like nature received from the employer as part of the contract of hire*, but shall not include overtime pay except in cases under subsection (2) of this section. *As consideration of like nature to board, housing, and fuel, wages shall also include the*

> *employer's payment or contributions, or appropriate portions thereof, for*
> *health care benefits* unless the employer continues ongoing and current
> payment or contributions for these benefits at the same level as provided at
> the time of injury.

(Emphasis added.)

Note that RCW 51.08.178 allows recovery of worker compensation benefits not solely on the basis of wage payments but also on some of the benefits afforded an employee by the employer. RCW 51.08.178(1) expressly expands that definition of "wages" to include the "reasonable value" of in-kind work benefits such as "board, housing [and] fuel" and "'consideration of like nature.'" *Cockle v. Department of Labor & Industries*, 142 Wn.2d 801, 808, (2001) (alteration in original).

If not for a Washington Supreme Court decision to the contrary, I would conclude that the word "fuel" in RCW 51.08.178 includes at a minimum gasoline provided by an employer for transportation to and from work and gasoline provided for pleasure travel. In an age before the extensive use of motor vehicles, the word might be limited to heating fuel or other methods of warming an abode, but the legislature inserted the word "fuel" in the statute in 1971. LAWS OF 1971, 1st Ex. Sess., ch. 289, § 14. The first definition of "fuel" in the *Merriam Webster Online Dictionary* is "a material used to produce heat or power by burning." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/fuel (last visited Mar. 5, 2020). Thus the primary definition extends to fuel that powers motor vehicles.

In *Cockle v. Department of Labor & Industries*, 142 Wn.2d 801 (2001), the Washington Supreme Court limited the term "fuel" to heating fuel for a residence. The court noted that the Washington Legislature borrowed the phrase "board, housing, [and] fuel" from boilerplate language inserted in worker compensation acts adopted in the early 1900s. *Cockle v. Department of Labor & Industries*, 142 Wn.2d at 809 n.3. Apparently, we do not always discern the meaning of statutory terms based on the meaning of the terms at the time of their adoption. One might deem the high court's construction of the word "fuel" in *Cockle* as dicta since the court only answered the question of whether health care benefits should be considered wages for purposes of RCW 51.08.178. Nevertheless, I abide by the Supreme Court's comment that the word "fuel" in the statute only references heating fuel.

Limiting the word "fuel" to heating fuel does not end the analysis for this appeal. The definition of "wages" for purposes of RCW 51.08.178 also extends to "other consideration of like nature received from the employer as part of the contract of hire." RCW 51.08.178(1)(g).

The Supreme Court, in *Cockle v. Department of Labor & Industries*, rejected the argument that, by not including health insurance benefits in its definition of wages in the 1971 version of RCW 51.08.178, the legislature intentionally excluded such benefits. Accordingly, by not including transportation benefits in RCW 51.08.178, the legislature

14

did not necessarily mean to exclude such costs in the worker compensation definition of wages.

When determining whether RCW 51.08.178 covered health care benefits, the Washington Supreme Court, in *Cockle v. Department of Labor & Industries*, employed the statutory principle of construction known as ejusdem generis. In turn, the Court wrote:

> We therefore construe the statutory phrase "board, housing, fuel, or other consideration of like nature" in RCW 51.08.178(1) to mean readily identifiable and reasonably calculable in-kind components of a worker's lost earning capacity at the time of injury that are critical to protecting workers' basic health and survival. Core, *non*fringe benefits such as food, shelter, fuel, and health care all share that "like nature." By contrast, we do not believe injury-caused deprivation of the reasonable value of *fringe* benefits that are *not* critical to protecting workers' basic health and survival qualifies as the kind of "suffering" that Title 51 RCW was legislatively designed to remedy.

*Cockle v. Department of Labor & Industries*, 142 Wn.2d at 822-23 (footnote omitted).

The legislature has since amended the statute to expressly include health care benefits as wages. In *Gallo v. Department of Labor & Industries*, 155 Wn.2d 470, 488-89, 120 P.3d 564 (2005), the Supreme Court reiterated that, in order to qualify as an employee benefit considered in determining worker compensation benefits, the benefit must be critical to the basic health and survival of the injured worker at the time of injury and necessary to maintain the worker's health or ensure his survival during even temporary periods of disability.

No. 36297-3-III
*Anderson v. Dep't of Labor and Indus.* (Dissent)

Based on the *Cockle* test, a court must assess whether a benefit is critical to basic health and survival. RCW 51.08.178 assumes that food, housing, and heat are critical to basic health and survival. Nevertheless, I note that one might survive without housing and heat since I often see Spokane citizens camped and sleeping under bridges in the midst of winter. In the course of history, billions have lived without board and fuel. Food and water may be the only materials essential for survival. But in our civilized society, we prefer that all receive shelter and warmth. The example of the homeless should compel this court to adjudge generously those benefits critical for survival and to include those benefits considered preferable or customary for survival in our era of history and in Washington civilized society.

I worry that, by announcing transportation to be a preferred, customary, and desired element of survival in today's world, I become overly simplistic. But then simplicity sometimes holds value and leads to the truth. In today's society, transportation looms critical. Survival and the payment of housing, heat, and food demands a job. A worker needs transportation to the job site such that transportation looms essential to maintaining a job and thereby garnering food, shelter, and warmth. The overwhelming majority of Washingtonians cannot hold a job without transportation to and from work, a benefit afforded Charles Anderson by his employer. In a larger city, the employer might pay for the employee's bus pass. Anderson needed a vehicle to attend work outside the city of Pasco.

16

The *Cockle* test also asks whether the subject employee benefit aids survival during even temporary periods of disability. The disabled worker may no longer need transportation to and from work, but the worker still demands transportation for survival. Presumably the worker needs to travel for medical treatment. The worker needs to travel for the purpose of gaining food and other necessities.

The Supreme Court, in *Cockle v. Department of Labor & Industries*, mentioned the need to construe RCW 51.08.178 broadly. The court noted RCW 51.12.010, which declares:

> This title shall be liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment.

The failure to recognize the essential need for transportation in modern society conflicts with this principle of liberal interpretation.

I dissent.

_____
Fearing, J.